

**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

**FILED**
FEB 11 2005
CLERK OF CIRCUIT COURT #66
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

F. RYAN BEMIS d/b/a FRANK BEMIS &
ASSOCIATES, individually and on behalf of all
others similarly situated,

                        Plaintiff,

     v.

SAFECO INSURANCE COMPANY OF
AMERICA and SAFECO INSURANCE
COMPANY OF ILLINOIS,

                      Defendants.

Case No. 05 L 152

## CLASS ACTION COMPLAINT

Plaintiff F. Ryan Bemis d/b/a Frank Bemis & Associates, individually and on behalf of all

others similarly situated, through their undersigned counsel, alleges for his Class Action

Complaint, upon personal knowledge as to himself and his own acts, and as to all other matters

upon information and belief, based upon, *inter alia*, the investigation made by their attorneys, as

follows:

**I.**    **INTRODUCTION AND BACKGROUND**

    1.    This is a case about a scheme by Safeco Insurance Company of America and

Safeco Insurance Company of Illinois (collectively, "Defendants" or "Safeco") and its Safeco

insurer affiliates (such as American States) to mislead and improperly reduce payouts under

medical payments coverage by using biased third party bill audit software programs to adjust

those medical expense claims.

    2.    Under Safeco's property and casualty policies (the "Policies"), Safeco is required

to pay all reasonable expenses incurred for necessary medical treatment for covered accidents. In

some states, this coverage is mandated by statute. However, Safeco does not do what its policies

require. Instead, Safeco systematically reduces its payments by "re-pricing" the submitted bills arbitrarily using biased computer software. Likewise, Safeco's computer software manipulates computer codes to arbitrarily reduce payouts by incorporating secret treatment guidelines into the system that deny treatment as purportedly not necessary when these guidelines are violated. Safeco also manipulates computer codes to arbitrarily reduce prices through practices known as "bundling" and "downcoding."

      3.     By failing to pay reasonable expenses for necessary medical treatment, Safeco breached its duties under its insurance contracts. Moreover, because Safeco's computer-generated payment/treatment limitations are not disclosed in the Policies, are not a true indicator of what is usual, customary or reasonable, or whether treatment is necessary, and are therefore unfair and deceptive, Safeco defrauded Plaintiffs and other members of the Class of the benefits to which they are entitled, violating the consumer fraud acts of Illinois and the various states. Moreover, by retaining the funds that are owed to the class members for the treatment provided, Safeco also maintains a benefit belonging to the class members, constituting unjust enrichment.

## II.    JURISDICTION AND VENUE

      4.     Jurisdiction over Defendants is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within this State), Section 2-209(a)(7) (making or performance of any contract or promise substantially connected with this State), Section 2-209(b)(4) (corporation doing business within this State), and Section 2-209(c) (any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States). 735 ILCS 5/2-209(a)(1), (a)(7), (b)(4) and (c).

      5.     Venue is proper in this County pursuant to 735 ILCS 5/2-102 because all or a substantial part of the transaction occurred in Madison County, Illinois, and under Section 10a(b)

of the Illinois Consumer Fraud and Deceptive Business Practices Act, as Defendants are doing business in this County. 815 ILCS 505/10a(b).

## III.   PARTIES

6.     **Plaintiff F. Ryan Bemis d/b/a Frank Bemis & Associates.** Plaintiff ("Dr. Bemis" or "Plaintiff") is a natural person and, at all times relevant hereto, a resident of Illinois and licensed medical provider. At all times relevant hereto, Plaintiff was an assignee and/or third-party beneficiary of a Safeco property and casualty insurance policy under which covered Medpay claims were made, as described more fully herein.

7.     **The Safeco Defendants:** Safeco Insurance Company of America and Safeco Insurance Company of Illinois (collectively, "Defendants" or "Safeco") are foreign corporations (except Safeco Insurance Company of Illinois, which, on information and belief, is an Illinois corporation) doing business in Madison County, Illinois and throughout the United States.

## IV.   SUBSTANTIVE ALLEGATIONS

**A.     Background of Safeco's Scheme to Reduce Medical Expense Claims Payouts**

8.     Safeco has issued substantially similar casualty insurance policies throughout the Class period. Safeco's Policies contain virtually uniform Medpay language obligating Safeco to pay all "reasonable expenses incurred for necessary medical ... services."

9.     Thousands of Safeco property & casualty insureds have been injured in covered occurrences and incurred usual, customary and reasonable expenses for necessary medical treatment from licensed medical providers.

10.    Despite Safeco's uniform promise under such policies to pay to or on behalf of its insured all "reasonable medical expenses for necessary medical ... services," Safeco:

(a)   "re-priced" Medpay claims to pre-determined percentiles and denied

claims as unreasonable (*e.g.*, using Explanation Codes such as "UCR80")

when they exceeded this secret pre-determined percentile;

(b)   partially denied treatment as unnecessary (*e.g.*, using Explanation Codes)

where the treatment was already provided in good faith by licensed

medical providers who believed the treatment was necessary and who

personally and physically examined the insured, which neither Safeco nor

its computer program had done prior to rendering their decision that such

treatment was unnecessary;

(c)   submitted Medpay claims to a third party's biased computer for valuation;

(d)   treated unconditional Medpay coverage as a "silent HMO," or managed

care plan;

(e)   treated Medpay claims as though such claims were filed by third-parties

adverse to Safeco; and

(f)   used computer reports as a subterfuge to reduce overall first-party Medpay

claims payouts.

11.     To implement its Medpay claims reduction scheme, Safeco disseminated uniform

instructional and training literature to its employees, which instructed them on how to reduce

Medpay claims payouts through the adversarial use of computer reports.

12.     As part of its re-pricing scheme, Safeco required Class members to submit claims

using standardized forms or their equivalents, and through use of standardized coding that would

make the claims suitable for computer re-pricing.  For example, all diagnoses of patients were

required to be submitted using "ICD-9" diagnostic codes.  Similarly, distinct medical procedures

-4-

and services were required to be identified with a five-digit Current Procedural Terminology

("CPT") Code.

13.     By performing computerized review of these claims using biased software, Safeco

managed to cheat class members out of benefits by improperly reducing / denying Medpay

claims payouts:  (1) through the ex-post "re-pricing" of claims made by the insured or his

provider for usual, customary and reasonable expenses for necessary medical services rendered in

good faith (2) through "downcoding" CPT Codes, (i.e., systematically changing CPT codes to

pay for a service cheaper than the medical service actually provided); and (3) through the

"bundling" of CPT codes (i.e., automatically collapsing two or more CPT codes into one CPT

code) and then paying for only that one service or procedure, and not each separate identified

service or procedure actually rendered by the licensed medical provider.

14.     Through its computerized "re-pricing" scheme, Safeco unilaterally limited the

amount of payment to Plaintiffs (as it did to every Class member) to a secret cap generated by the

computer software used by Safeco, which as designed enabled Safeco to limit medical payments

to a predetermined, maximum percentile (e.g., the "85th percentile").

15.     Under the "re-pricing" scheme, Safeco secretly reduced submitted medical bills to

a pre-set percentile even though the charges were the usual medical charges that the medical

providers charged their patients, visit after visit, on a customary basis.  The re-pricing software

was specifically designed to save Safeco money by reducing the amount of benefits paid under

Safeco insurance policies, and by consistently generating computer reports (i.e., EORs or

Explanations of Review) that regularly recommend partial payment of submitted claims.

16.     This retroactive, systematic reduction was never disclosed to Plaintiff or other

Class members in Safeco's insurance policies or marketing materials.  Safeco has never disclosed

-5-

to Plaintiff or to other members of the Class that any claim for medical payments under an

Safeco insurance policy may not exceed previously established mathematical limits for

reasonable medical expenses, or fall outside pre-determined parameters or "rules" for necessary

medical services.

17.   Similarly, the biased software contains arbitrary "rules" and "guidelines" for

duration and frequency of treatment, bundling, unbundling and downcoding of CPT Codes.

These computerized "rules" and "guidelines" have never been disclosed to insured persons or to

their treating medical providers at any time during the class period.

18.   While Safeco used these biased computer reports as ostensible support for its

position that covered medical expense claims were not usual, customary or reasonable, or were

not necessary, in reality the reports had no connection to what was UCR or necessary, but were

designed solely to reduce payouts and increase Safeco's profit margins.

19.   Safeco manufactured this bogus support so that the Class members would either:

(1) not challenge Safeco's UCR / necessity determinations; or (2) challenge Safeco's amount but

then compromise the challenge by "splitting the baby" (i.e., accepting payment for an amount

greater than Safeco's amount, but less than the submitted bills), all the while unaware the

Safeco's conduct was unfair, biased and certainly not independent in the first place.

20.   To give the appearance of legitimacy, Safeco sent claimants computer generated

medical audit "reports" – called "Explanation of Review" or "Explanation of Benefits" ("EOR"

or "EOB") – that set forth the "Charge" and "Reduction" along with particular codes (such as

code "UCR80") that set forth the purported basis for reduced payment.  (A copy of Plaintiff's

EOR is attached as Exhibit A).

-6-

21.     As intended, the computer software consistently produced EORs that recommended that Safeco partially reduce Medpay claims (like Plaintiff's) within policy limits. For example, Plaintiff's EOR notes that some charges are not being paid in full because they purportedly exceed the usual and customary charge for that particular service in the geographic region in which the service was rendered. (See Exhibit A: "Reimbursed according to UCR 80[th] percentile data").

22.     Safeco partially refused to pay Plaintiff's (and each class member's) reasonable and necessary medical expenses, even though: (a) the policy did not require that they (or any class member) pre-authorize medical treatment or expense in order for it to be covered by the Medpay policy; (b) the disputed medical treatment was dictated and called for in good faith by a licensed medical professional; and (c) the disputed medical treatment and expense had already been incurred (and was within the policy limits).

23.     The amount by which Safeco reduces individual claims is sufficiently low – usually by less than $1,000 per claim – that there is no incentive for individuals to pursue action against Safeco, making a Class claim pursuing damages in the aggregate an appropriate, and, for all practical purposes, the only meaningful means of seeking relief.

24.     As a result of Safeco's uniform reduction of Medpay claims as unreasonable or unnecessary, Plaintiff and the Class have been damaged and Safeco has saved millions of dollars on claims that should have been fully paid under the express terms of the policies under which they were insured.

-7-

**B.**   **Facts as to Plaintiff Bemis**

25.   Plaintiff Bemis is a doctor of chiropractic medicine licensed to practice in Illinois.

26.   At all times relevant hereto, Dr. Bemis was an assignee of Thatcher Levi, a person who was an insured under a form Safeco casualty insurance policy (an insurance policy containing medical payments coverage). On information and belief, the policy provided in pertinent part:[1]

27.   With respect to each class member, Safeco's policies promised the following medical expenses/payment coverage in the event of a covered claim:

> We will pay reasonable expenses for ...necessary
> medical services.

28.   In and before 2002, Plaintiff treated Thatcher Levi under the above-described casualty insurance policy (or substantially similar policy) for personal injuries sustained in an auto accident, and for which Plaintiff obtained a valid assignment of claim, which Safeco recognized through its direct payment to Plaintiff.

29.   Levi incurred reasonable medical expenses for necessary medical treatment from Plaintiff, a licensed medical provider, within the meaning of the above-described policy, totaling several thousand dollars. Plaintiff billed Safeco insured his usual and customary fee (*i.e.*, the fee he charged other patients) for a particular medical service.

30.   Notwithstanding its obligation to pay all "reasonable expenses" incurred for necessary medical treatment, Safeco reduced the payment to Plaintiff pursuant to its computerized re-pricing scheme as reflected on the EOR attached as <u>Exhibit A.</u> For example, Safeco made a $9.05 computer reduction on a $75.00 charge on December 23, 2002 for CPT

-8-

Codes 97750, based on the assertion that he was being "Reimbursed according to UCR 80[th]

percentile data" (whatever that means).  (See Exhibit A.)

## V.     CLASS ACTION ALLEGATIONS

31.     This action is brought pursuant to 735 ILCS 5/2-801, and satisfies the

prerequisites set forth therein.

### A.     Class Definition

32.     Plaintiff brings this action individually and on behalf of the following class (the

"Class"):

> All insured persons and licensed medical providers who: (a)
> submitted first-party medical claims to a Safeco member company
> pursuant to a Safeco insurance policy; (b) had their claim
> submitted to computer review, (c) received or were tendered an
> amount less than the submitted medical expenses and (d) received
> or were tendered an amount less than the stated policy limits

Excluded from the Plaintiff Class are persons whose claims were referred to Safeco's Special

Investigative Unit and were found fraudulent.  Also excluded from the Class are: (1) claims

based on reductions pursuant to state-mandated fee schedules; (2) statutory fraud claims by

persons who reside in the following states (because these state statutes expressly exclude

insurance transactions from statutory coverage):  Alabama, Alaska, Florida, Georgia, Idaho,

Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Missouri, New Hampshire, Rhode Island,

South Carolina, Utah, Vermont, Virginia and Wisconsin; (3) claims for amounts that were denied

because the submitted bills were duplicate bills, were not related to a covered occurrence, the

treatment took place prior to the date of occurrence, or the claim contained coding errors; (4)

---

[1]     Plaintiff does not currently have a copy of the Safeco policy under which he claims, but will obtain a copy
in discovery.

members of the Illinois state judiciary, and (5) Safeco and any entity in which it has a controlling

interest, including officers and directors and the members of their immediate families.

**B.     Numerosity**

33.     The members of the Class, being geographically dispersed and believed to number

in the thousands, are so numerous that joinder of them in a single action is impracticable.  735

ILCS 5/2-801(1).

**C.     Common Questions of Law and Fact**

34.     There are questions of law and fact that are common to all class members,

including *inter alia*:

(a)     Whether Safeco unilaterally re-priced, or re-valued,
        medical expense claims to a set percentile without
        disclosing this practice in its insurance policies;

(b)     Whether Safeco's Policies impose an obligation to pay
        reasonable expenses for necessary medical treatment;

(c)     Whether Safeco made assessments of what constitutes
        "necessary" treatment based on secret treatment guidelines
        incorporated into a computer;

(d)     Whether Safeco's conduct in processing and adjusting
        medical expense claims, as alleged, constitutes an unfair or
        deceptive practice;

(e)     Whether Safeco's practice of retroactively reducing already
        incurred medical treatment and expense claims constitutes
        an unfair or deceptive practice;

(f)     Whether Safeco "bundles" and/or "downcodes";

(g)     Whether "bundling" and/or "downcoding" is permissible;

(h)     Whether Safeco breached its contract;

(i)     Whether Safeco's conduct constitutes statutory fraud, and

-10-

       (j)      Whether Safeco has unjustly enriched itself at the expense
of Class Members;

       (k)      Whether Plaintiffs and the Class have been damaged, and if
so, in what amount.

**D.   Adequacy of Representation**

35.   Plaintiff can and will fairly and adequately represent and protect the interests of
the Class, 735 ILCS 5/2-801, for the reasons enumerated infra.

36.   The claims of Plaintiff are substantially similar, if not identical to, those of absent
Class members.

37.   There are questions of law or fact that are common to the Class and that
overwhelmingly predominate over any individual issues, such that by prevailing on his own
claims, Plaintiff will necessarily establish Defendants' liability as to all Class members.

38.   Without the Class representation provided by Plaintiff, virtually no Class
members will receive legal representation or redress for their injuries.

39.   Plaintiff and his counsel have the necessary financial resources to adequately and
vigorously litigate this class action.

40.   Plaintiff and Class counsel are aware of their fiduciary responsibilities to Class
members and are determined diligently to discharge those duties by vigorously seeking the
maximum possible recovery for the Class.

**E.   Appropriateness**

41.   A class action is appropriate, if not superior, to any other available method for the
fair and efficient adjudication of this controversy, given that:

       (a)      Common questions of law and fact overwhelmingly
predominate over any individual questions that may arise,
such that there would be enormous economies to the Court

-11-

and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;

(b)    The size of each Class member's relatively small claim is too insignificant to make individual litigation an economically viable alternative, such that as a practical matter there is no "alternative" means of adjudication to a class action;

(c)    Few Class members have any interest in individually controlling the prosecution of separate actions (any that do may opt out);

(d)    Class treatment is required for optimal deterrence and compensation and for limiting the court-awarded reasonable legal expenses incurred by Class members;

(e)    Despite the relatively small size of individual Class members' claims, their aggregate volume, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this class action to be litigated on a cost-effective basis, especially when compared with repetitive individual litigations; and

(f)    No unusual difficulties are likely to be encountered in the management of this class action insofar as Defendant's liability turns on substantial questions of law or fact that are common to the Class and that predominate over any individual questions.

## VI.    FRAUDULENT CONCEALMENT

42.    Throughout the Class period, Safeco affirmatively concealed from Plaintiffs and other members of the Class the foregoing wrongful scheme to reduce the amounts Safeco would pay on medical expense claims as provided in the Policies it issued.

43.    Safeco had a duty to inform claimants that their Medpay claims would be subject to the determination of claims evaluation software, that undisclosed ceilings in benefits were being imposed, and that payments would be automatically capped and limited thereby. Notwithstanding its duty to Plaintiff and other members of the Class, Safeco never disclosed its medical expense claims reduction scheme.

-12-

44. Despite exercising reasonable diligence, Plaintiff and other members of the Class could not have earlier discovered Safeco's wrongful scheme to reduce Medpay claims, as described herein.

45. The running of the statute of limitations has been suspended with respect to any claims that Plaintiff or the Class have brought or could have brought as a result of the unlawful and fraudulent course of conduct described herein. Safeco, through various devices of secrecy, affirmatively and fraudulently concealed its unlawful scheme and course of conduct from Plaintiffs and the other members of the Class. Plaintiff and the Class were unable to earlier discover Safeco's scheme and unlawful conduct, or any of the facts which might have led to the discovery of its wrongdoing, with the exercise of due diligence.

46. Safeco is estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its acts of fraudulent concealment and by selling insurance policies under which it did not intend to perform. Safeco has actively concealed the conduct alleged herein by, inter alia, suppressing disclosure of this information through confidentiality agreements negotiated with third party vendors and by not disclosing in its insurance policies any of the conduct alleged herein.

## VII.   CAUSES OF ACTION

### COUNT I
### (BREACH OF CONTRACT)

47. Plaintiff repeats and re-alleges the preceding allegations set forth in the prior paragraphs as if fully stated herein.

48. Safeco's insurance agreement required Safeco to pay the reasonable expense for necessary medical treatment that was prescribed in good faith by the class member's medical professional.

-13-

49.    At all times, Plaintiff and class members complied with and performed all material obligations with Safeco, including, if applicable, payment of all premiums owed and submission of reasonable proof of claim.  They fulfilled their obligations under the above-described auto insurance policies by providing proof of loss and of the claim and, including, if applicable, paying any premiums due and any other information required of them, such as submitting medical bills from licensed medical providers.

50.    Notwithstanding its obligation to pay all reasonable expenses for necessary medical treatment, Safeco arbitrarily refused to pay portions of Plaintiff's and Class members' Medpay claims based on arbitrary percentile cutoffs, computerized utilization rules, and bundling/unbundling rules, as detailed more fully above.

51.    Based on the foregoing, Safeco breached its insurance contracts with plaintiff and the class because Safeco engaged in a course of conduct that was not expressly disclosed in its insurance contracts; and failed and/or refused to pay all reasonable and necessary medical treatment/expense incurred/provided by plaintiffs and the class.

52.    Plaintiff and the class were damaged as a result of Safeco's breach of contract in an amount to be proven at trial.

WHEREFORE, Plaintiff, individually and on behalf the Class of persons described herein, pray for an Order of this Honorable Court as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, and certifying the Class defined herein;

B.    Designating Plaintiff as representative of the Class and his counsel as Class counsel;

-14-

C.     Entering final judgment in favor of Plaintiff and the Class and against

Defendants;

D.     Awarding Plaintiff and the Class their damages, reasonable attorneys' fees

and costs, including interest thereon (but in no event shall the value of

such recovery to Plaintiffs exceed $75,000.00); and

E.     Granting such further relief as the Court deems just.

## COUNT II
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, et seq.) and the Substantially Similar Laws of Other States)

53.     Plaintiff repeats and re-alleges the preceding allegations set forth in the prior

paragraphs as if fully stated herein.

54.     At all times relevant hereto, there was in full force and effect the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. and substantially

similar state consumer protection statutes (collectively, "Consumer Fraud Acts"). The claims of

Illinois class members (such as Plaintiff) are brought under the Illinois Consumer Fraud and

Deceptive Business Practices Act, 815 ILCS 505/1 et seq. The claims of nonresident class

members are brought under the consumer protection statute(s) of their respective states of

residence, which are incorporated by reference herein, excluding those states identified in

paragraph 31 (collectively, the "Consumer Fraud Acts").[2]

---

[2]     The claims of Illinois insureds (such as Plaintiff) are brought under the Illinois Consumer Fraud Act. The claims of non-Illinois insureds are brought under the consumer protection statute(s) of their respective states. *See* Ariz. Rev. Stat. Ann. § 44-1521 *et seq.* (Arizona); Ark. Code Ann. § 4-88-101 *et seq.* (Arkansas); Cal. Bus. & Prof. Code § 17200 *et seq.*, and Cal. Bus. & Prof. Code § 17500 *et seq.* (California); Colo. Rev. Stat. § 6-1-105 *et seq.* (Colorado); Conn. Gen. Stat. § 42-110a (Connecticut); Del. Code Ann. Tit. 6, § 2511 *et seq.* (Delaware); D.C. Code Ann. § 28-3901 *et seq.* (District of Columbia); Haw. Rev. Stat. § 481A-1 *et seq.* and Haw. Rev. Stat. § 480-1 *et seq.* (Hawaii); Ky. Rev. Stat. § 367.110 *et seq.* (Kentucky); Mass Gen. L. Ch. 93A, § 1 *et seq.* (Massachusetts); Mich. Stat. Ann § 445.901 *et seq.*, Mich. Stat. Ann. § 19.418(1) *et seq.* (Michigan); Minn. Stat. § 325F.68 *et seq.*, Minn. Stat. § 8.31 (Minnesota); Miss. Code Ann. § 75-24-3 *et seq.* (Mississippi); Mont. Code Ann. § 30-14-101 *et seq.* (Montana); Neb. Rev. Stat. § 59-1601 *et seq.* (Nebraska); Nev. Rev. Stat. § 41.600 and Nev. Rev. Stat. § 598.0903 *et seq.* (Nevada); N.J. Rev. Stat. § 56:8-1 *et seq.*, N.J. Rev. Stat. § 56:12-1 *et seq.* (New Jersey); N.M. Stat. Ann. § 57-12-1 *et seq.* (New Mexico); N.Y. Gen. Bus. Law. § 349 *et seq.* (New York); N.C. Gen. Stat. § 75-1 *et seq.* (North

-15-

55.     Under the Consumer Fraud Acts, the use or employment of any practice described in, for example, Section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2) in the conduct of any trade or commerce is unlawful whether any person has in fact been misled, deceived or damaged thereby.

56.     Plaintiff and the Class are consumers within the meaning of Consumer Fraud Acts given that Defendants' business activities with them involve trade or commerce and are addressed to the market generally and/or otherwise implicate consumer protection concerns.

57.     Defendants have committed unfair or deceptive acts by engaging in the acts and practices alleged herein including, but not limited to, the regular and systematic denial or reduction of claims for payment of covered medical expenses as described herein.

58.     Defendants misrepresented, concealed, suppressed or omitted the material fact of and the reasons for such denials or reductions (i.e., because they exceeded limitations arbitrarily set by Defendants but not contained in the Policies themselves) with intent that Plaintiff and the Class so rely.

59.     As a direct and proximate result of the foregoing deceptive acts and practices of Defendants, Plaintiff and the Class were damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff, individually and on behalf the Class of persons described herein, prays for an Order of this Honorable Court as follows:

Carolina); N. D. Cent. Code § 51-15-01 et seq. (North Dakota); Ohio Rev. Code Ann. § 1345.01 et seq. (Ohio); Okla. Stat. Tit. 15, § 751 et seq. (Oklahoma); Ore. Rev. Stat. § 646.605 et seq. (Oregon); Penn. Stat. § 201-1 et seq. (Pennsylvania); S.D. Codified Laws Ann. § 37-24-1 et seq. (South Dakota); Tenn. Code Ann. § 47-18-101 et seq. (Tennessee); Tex. Bus. & Com. Code Ann. § 17.41 et seq. (Texas); Wash. Rev. Code § 19.86.010 et seq. (Washington); W. Va. Code § 46A-6-101 et seq. (West Virginia); and Wyo. Stat. § 40-12-101 et seq. (Wyoming).

-16-

A.    Finding that this action satisfies the prerequisites for maintenance as a

class action set forth in 735 ILCS 5/2-801, and certifying the Class defined

herein;

B.    Designating Plaintiff as representative of the Class and his counsel as

Class counsel;

C.    Entering final judgment in favor of Plaintiff and the Class and against

Defendants;

D.    Awarding Plaintiffs and the Class their damages, reasonable attorneys'

fees and costs, including interest thereon (but in no event shall the value of

such recovery to Plaintiffs exceed $75,000.00); and

E.    Granting such further relief as the Court deems just.

## COUNT III
### (Unjust Enrichment)

60.    This Count is brought based on the tortious allegations made generally herein,

including those contained in Count II, supra.

61.    Plaintiff repeats and re-alleges the preceding allegations set forth in the prior

paragraphs as if fully stated herein.

62.    As a result of Defendants' acts and omissions alleged herein, Defendants have

unjustly received and retained a benefit to the detriment of Plaintiff and the Class, and

Defendants' retention of this benefit violates fundamental principles of justice, equity, and good

conscience. The specific sum of money unlawfully received and retained is readily identifiable

from information and records in Defendants' possession or control.

-17-

63.     Plaintiff and other Class members, therefore, are entitled to the return of all such amounts owed them, plus statutory interest from the date such amounts were unlawfully received and retained, statutory interest on said amounts from the date the right to payment was acquired by Plaintiff and other members of the Class.

64.     As a direct and proximate result of Safeco's unjust enrichment, Plaintiff and Class members have suffered injury and seek relief restoring them to the positions they would be in had Safeco not been unjustly enriched, consistent with the limitations set forth infra.

WHEREFORE, Plaintiff, individually and on behalf the Class of persons described herein, prays for an Order of this Honorable Court as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, and certifying the Class defined herein;

B.     Designating Plaintiff as representative of the Class and his counsel as Class counsel;

C.     Entering final judgment in favor of Plaintiffs and the Class and against Defendants;

D.     Awarding Plaintiff and the Class equitable relief, including but not limited to the return of monies wrongfully obtained by Defendants (but in no event shall value of such recovery to Plaintiffs exceed the sum of $75,000.00); and

-18-

E.     Granting such further relief as the Court deems just.


DATED: February 11, 2005.                    Respectfully submitted,

                                             F. RYAN BEMIS d/b/a FRANK BEMIS &
                                             ASSOCIATES,
                                             Class Plaintiff

                                             By: _____
                                                 One of His Attorneys

Paul M. Weiss #6217260                       Bradley M. Lakin #6243318
Jonathan B. Piper #6196071                   Richard J. Burke #6255504
William M. Sweetnam #6226203                 Gary E. Peel #02166259
FREED & WEISS LLC                            Jeffrey A. J. Millar #6271673
111 West Washington Street, Suite 1331       THE LAKIN LAW FIRM, P.C.
Chicago, Illinois 60602                      300 Evans Avenue, P.O. Box 229
Ph. 312.220.0000                             Wood River, IL 62095-1127
                                             Ph. 618.254.1127

Timothy F. Campbell #378526
CAMPBELL & MCGRADY LAW OFFICE                **Attorneys for Plaintiff**
3017 Godfrey Road                            **and Proposed Plaintiff Class**
P.O. Box 505
Godfrey, Illinois 62035


-19-

 

 **EXPLANATION OF REVIEW**
Original

CO0195239- 01/08/2003 -TE - 01/15/2003

SAFECO - HOME OFFICE/DENVER, ST. LOUIS

Illinois

Service Provider : BEMIS, F RYAN

37-1224217   4105 HUMBERT ROAD
ALTON IL 62002

Billing Provider : BEMIS, F RYAN

37-1224217   4105 HUMBERT ROAD
ALTON IL 62002

Claim Number : 605792281007
Claim Type : PIP / IL
Date Of Loss : 11/23/2002
Adjustor ID : JANHUL

Patient : LEVI, THATCHER

328 VENUS DRIVE
GODFREY IL 62035

Patient Account # : 10364-1-5

Carrier : SAFECO AUTO

Dates Of Service : 12/23/2002 to 12/23/2002

| DIAGNOSTIC CODES | DESCRIPTION |
|---|---|
| 8813.0 | ICD-9 - Motor vehicle traffic accident involving collision with other vehicle/driver of motor vehicle other than motorcycle |
| 839.08 | ICD-9 - Closed dislocation, multiple cervical vertebrae |
| 723.1 | ICD-9 - Cervicalgia |
| 847.0 | ICD-9 - Neck sprain |

| LINE | DOS | PROC CODE | MOD | DESCRIPTION | UNITS | CHARGE | SCHEDULE | PPO | CF | PROVIDER REIMBURSE | EXPLANATION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 12/23/02 | 96002 | | DYN SURFCE EMG DUR WALK/OTH FUNC ACTV 1-12 | 1 | 75.00 | 0.00 | 0.00 | 0.00 | 75.00 | BA |
| 2 | 12/23/02 | 95999 | 52 | UNLISTED NEUROLOGICAL/NEUROMUSCU | 1 | 25.00 | 0.00 | 0.00 | 0.00 | 25.00 | BA |
| 3 | 12/23/02 | 97750 | | PHYS PERFORMANCE TEST/MEASUR W/REPORT EA | 1 | 75.00 | 9.05 | 0.00 | 0.00 | 65.95 | UCR50 |
| 4 | 12/23/02 | 99213 | 25 | OFFICE/OUTPT VISIT E&M EST LOW-MOD SEVERTY 15MIN | 1 | 50.00 | 0.00 | 0.00 | 0.00 | 50.00 | BA |
| 5 | 12/23/02 | 98941 | | CHIROPRACTIC MANIP TX SPINAL 3-4 REGIONS | 1 | 38.00 | 0.00 | 0.00 | 0.00 | 38.00 | BA |
| Total Lines : | 5 | | | | | 253.00 | 9.05 | 0.00 | 0.00 | 253.95 | |

The submitted claim, resulting in this explanation of review, reimbursement or benefit, was processed in accordance with the regulatory requirements (statutes, regulations or administrative codes) of the jurisdiction in which the claim was submitted. Re-pricing of claims for non-fee schedule jurisdictions is performed employing a usual and customary data set.

This is Concentra's recommendation to SAFECO. SAFECO will review the charges and make payment, if any, under separate cover. Any cash disbursements will come directly from SAFECO, which is solely responsible for determining the ultimate payment amount.

If you have any questions about this EOR please call 188-258-7970.

**EXHIBIT A**

7175 WEST JEFFERSON AVENUE SUITE 4000, DENVER, CO 80235

Printed On --
20-Jan-2003  4:53 pm

866.258.7970

Page 1 of 2

| | | |
|---|---|---|
| Claim Number   –   505792291007 | Total Charges  –  $263.00 | CO0195239- EOBID -TE |
| Claim Type   –   PIP / IL | | Original |
| Billing Provider  –  BEMIS, F RYAN | Total PPO Discounts  –  $0.00 | |
| Service Provider   BEMIS, F RYAN | Total Reimbursement  –  $253.95 | |
| Patient Name   –   LEVI, THATCHER | Dates Of Service  –  12/23/2002  –  12/23/2002 | |

| | | |
|---|---|---|
| Total Charges : | $ | 263.00 |
| Schedule Reduction : | $ | 9.05 |
| Correct Coding Compliance Reduction : | $ | 0.00 |
| PPO Reduction : | $ | 0.00 |
| Compliance Penalty : | $ | 0.00 |
| Recommended Total Reimbursement : | $ | 253.95 |
| Deductible : | $ | 0.00 |
| Copayment : | $ | 0.00 |
| Recommended Carrier Payment : | $ | 253.95 |

| EXPLANATION | EXPLANATION FOR THE REVIEW AMOUNT | REF DOC_ID | REF LINE NUMBER |
|---|---|---|---|
| BA | Billed Amount | | |
| UCR50 | Reimbursed according to UCR 50th percentile data. | | |

Modifier Code Summary

| MODIFIER CODE | Description |
|---|---|
| 25 | Significant, Separately Identifiable Evaluation and Management Service by the Same Physician on the Same Day of the Procedure or Other Service |
| 52 | Reduced Services |

The submitted claim, resulting in this explanation of review, reimbursement or benefit, was processed in accordance with the regulatory requirements (statutes, regulations or administrative codes) of the jurisdiction in which the claim was submitted.  Re-pricing of claims (for non-fee schedule jurisdictions is performed employing a usual and customary charge list.

This is Conquest's recommendation to SAFECO. SAFECO will review the charges and make payment, if any, under separate cover. Any cash disbursements will come directly from SAFECO, which is solely responsible for determining the ultimate payment amount.

If you have any questions about this EOR please call 866-258-7970.

7175 WEST JEFFERSON AVENUE SUITE 4000, DENVER, CO 80235



**IN THE CIRCUIT COURT**
**THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**



FILED

FEB 11 2005

CLERK OF CIRCUIT COURT #66
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

F. RYAN BEMIS d/b/a FRANK BEMIS &
ASSOCIATES, individually and on behalf of all
others similarly situated,

Plaintiff,

Case No. 05 L

v.

SAFECO INSURANCE COMPANY OF
AMERICA and SAFECO INSURANCE
COMPANY OF ILLINOIS,

Defendants.

### AFFIDAVIT OF GARY E. PEEL

This Affidavit is made pursuant to Supreme Court Rule 222(b). Under penalties of

perjury as provided by §1-109 of the Code of Civil Procedure, the undersigned certifies that

money damages sought in the above-captioned putative class action herein will exceed

$50,000.00. Plaintiff asserts his individual claim is worth less than $75,000.00. Plaintiff

expressly disclaims any individual recovery in excess of $75,000.00, exclusive of costs and

interest.

Dated: February 11, 2005.

Respectfully submitted,

GARY E. PEEL

By: _____
One of Plaintiff's Attorneys




**IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS**

FEB 11 2005

CLERK OF CIRCUIT COURT #66
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

F. RYAN BEMIS d/b/a FRANK BEMIS &
ASSOCIATES, individually and on behalf of all
others similarly situated,

                                    Plaintiff,

        v.

SAFECO INSURANCE COMPANY OF
AMERICA and SAFECO INSURANCE
COMPANY OF ILLINOIS,

                                    Defendants.

Case No. 05 L    152

## PLAINTIFF'S MOTION
## FOR CLASS CERTIFICATION

Plaintiff hereby moves the Court, pursuant to 735 ILCS 5/2-801, for certification of the

following class:

> All insured persons and licensed medical providers who: (a)
> submitted first-party medical claims to a Safeco member company
> pursuant to a Safeco insurance policy; (b) had their claim
> submitted to computer review, (c) received or were tendered an
> amount less than the submitted medical expenses and (d) received
> or were tendered an amount less than the stated policy limits

Excluded from the Plaintiff Class are persons whose claims were referred to Safeco's

Special Investigative Unit and were found fraudulent. Also excluded from the Class are:

(1) claims based on reductions pursuant to state-mandated fee schedules; (2) statutory

fraud claims by persons who reside in the following states (because these state statutes

expressly exclude insurance transactions from statutory coverage): Alabama, Alaska,

Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Missouri,

New Hampshire, Rhode Island, South Carolina, Utah, Vermont, Virginia and Wisconsin;

(3) claims for amounts that were denied because the submitted bills were duplicate bills,

 

were not related to a covered occurrence, the treatment took place prior to the date of

occurrence, or the claim contained coding errors; (4) members of the Illinois state

judiciary, and (5) Safeco and any entity in which it has a controlling interest, including

officers and directors and the members of their immediate families.

In support of his motion, Plaintiffs state the following:

1.      The Class satisfies all of the statutory prerequisites for class certification.

2.      Joinder of all members of the Class is not practical, as it consists of thousands of

persons who reside throughout Illinois and an as-yet-undetermined geographic area within the

United States.  735 ILCS 5/2-801(1).  The precise scope of the Class will be ascertained in

discovery.

3.      There are common questions of fact and law that predominate over any issues

affecting only individual Class members.  As set forth more fully in Plaintiff's Class Action

Complaint, the claims of the Class arise from the same Safeco company policy, the same Safeco

corporate practice which Plaintiff and the Class are challenging, the claims of Plaintiff and other

Class members are governed by form documents (*i.e.*, the insurance policy) and are based on the

same legal theories.  735 ILCS 5/2-801(2).

4.      Plaintiff will fairly and adequately represent and protect the Class, and has no

interests antagonistic to the interests of the Class.  All Class members have the same legal right

to fair treatment by Safeco, including the disclosure of material facts regarding their policies and

the proper processing of their Medpay claims.  By proving his claims, Plaintiff will prove the

claims of the Class.

-2-

5.     Plaintiff has retained competent counsel, experienced in the prosecution of class actions. Counsel has prosecuted and will continue to prosecute this action vigorously in the interests of Plaintiff and the Class. 735 ILCS 5/2-801(3).

6.     A class action "is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). If this case does not proceed as a class action, Plaintiff and other Class members will effectively be left without a remedy because the cost to an individual plaintiff of proving Safeco's wrongful conduct in an individual lawsuit would vastly exceed the benefit.

WHEREFORE, for all of the foregoing reasons, Plaintiff respectfully prays for an order certifying the Class described herein, appointing Plaintiff as the representative of the Class and counsel as Class counsel, and for such further relief as the Court deems appropriate.

DATED: February 11, 2005.                    Respectfully submitted,

                                             F. RYAN BEMIS d/b/a FRANK BEMIS &
                                             ASSOCIATES,
                                             Class Plaintiff,

                                             By: _____
                                                 One of His Attorneys

Paul M. Weiss #6217260                       Bradley M. Lakin #6243318
Jonathan B. Piper #6196071                   Richard J. Burke #6255504
William M. Sweetnam #6226203                 Gary E. Peel #02166259
FREED & WEISS LLC                            Jeffrey A. J. Millar #6271673
111 West Washington Street, Suite 1331       THE LAKIN LAW FIRM, P.C.
Chicago, Illinois 60602                      300 Evans Avenue, P.O. Box 229
Ph. 312.220.0000                             Wood River, IL 62095-1127
                                             Ph. 618.254.1127

Timothy F. Campbell #378526
CAMPBELL & MCGRADY LAW OFFICE                Attorneys for Plaintiff
3017 Godfrey Road                            and Proposed Plaintiff Class
P.O. Box 505
Godfrey, Illinois 62035

-3-

IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US


F RYAN BEMIS DBA FRANK BEMIS & ASSOCIATES IND/BEHALF OF ALL
                    PLAINTIFF                          DATE: 2/14/2005

    VS.

                                              CASE No. 2005 L  000152

SAFECO INSURANCE COMPANY OF AMERICA
RA: ILLINOIS DIR OF INS
320 WEST WASHINGTON
SPRINGFIELD      IL 62767
                    DEFENDANT


DEFENDANT SAFECO INSURANCE COMPANY OF AMERICA:


    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance,
in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of
the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the
relief prayed in the complaint.


    This summons must be returned by the officer or other person to whom it was given for service, with
endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this
summons shall be returned so endorsed.


    This summons may not be served later than 30 days after its date.


    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois,
this FEBRUARY 14, 2005.



                    MATT MELUCCI
                    CLERK OF THE CIRCUIT COURT

    (SEAL)

                    BY: _____
                          Deputy Clerk


=================================================================================
(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

GARY E. PEEL
THE LAKIN LAW FIRM PC
300 EVANS AVE
PO BOX 229
WOOD RIVER      IL 62095
 Date of Service:_____, 20_____.
 (To be inserted by officer on the copy left with the defendant or other person)

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 692-6240
WWW.CO.MADISON.IL.US



F RYAN BEMIS DBA FRANK BEMIS & ASSOCIATES IND/BEHALF OF ALL
              PLAINTIFF                              DATE: 2/14/2005

VS.
                                                 CASE No. 2005 L 000152

SAFECO INSURANCE COMPANY OF ILLINOIS
RA: ANY OFFICER OR DIRECTOR
2800 WEST HIGGINS ROAD
HOFFMAN ESTATES  IL 60195
                     DEFENDANT          000014-1.2.1 03/02/05 10:24
                                           1 FOREIGN WRIT            23.00
DEFENDANT SAFECO INSURANCE COMPANY OF ILLINOIS:   1 MILEAGE          12.80
                                         REF SHERIFF # 476723
                                         CASE TOTAL                  35.80 %
    You are hereby summoned and required to file an answer in this case, or otherwise file your appearance  TOTAL
in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of  35.80 TL
the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the  CHECK 1 35.80
relief prayed in the complaint.                                       CASHIER: DENISE

    This summons must be returned by the officer or other person to whom it was given for service, with
endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this
summons shall be returned so endorsed.

    This summons may not be served later than 30 days after its date.

    Witness:  MATT MELUCCI the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois,
this FEBRUARY 14, 2005.


                        MATT MELUCCI
                        CLERK OF THE CIRCUIT COURT

    (SEAL)

                        BY: _____Bentlage_____
                             Deputy Clerk

===================================================================
(Plaintiff's attorney or plaintiff if he is not represented by an attorney)

GARY E. PEEL
THE LAKIN LAW FIRM PC
300 EVANS AVE
PO BOX 229
WOOD RIVER      IL 62095
  Date of Service: _____, 20_____.
  (To be inserted by officer on the copy left with the defendant or other person)

TYPE LAW          SHERIFF'S OFFICE OF COOK COUNTY, ILLINOIS     DISTRICT 227

SHERIFF'S NUMBER 476723-001D CASE NUMBER 2005L000152   DEPUTY: _____

FILED DT 02-14-2005  RECEIVED DT 03-02-2005 DIE DT 03-15-2005 MULTIPLE SERVICE   1
    DEFENDANT                                    ATTORNEY
SAFECO INSURANCE COMPANY OF ILLINOIS            THE LAKIN LAW FIRM, P.C.
2800 W HIGGINS RD                               P.O. BOX 229
HOFFMAN ESTATES IL. 60195                       WOOD RIVER IL. 62095
                                                618 254-1127

PLAINTIFF F. RYAN BEMIS D/B/A FRANK

SERVICE INFORMATION: KM ANY OFFICER OR DIRECTOR, R/A

***************************************************************************
(A)  I CERTIFY THAT I SERVED THIS SUMMONS ON THE DEFENDANT AS FOLLOWS:

.....1 PERSONAL SERVICE:  BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT WITH THE
        NAMED DEFENDANT PERSONALLY.
.....2 SUBSTITUTE SERVICE:  BY LEAVING A COPY OF THE SUMMONS AND A COPY OF THE
        COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH SOME PERSON OF THE
        FAMILY OR A PERSON RESIDING THERE, OF THE AGE OF 13 YEARS OR UPWARDS, AND
        INFORMING THAT PERSON OF THE CONTENTS THEREOF. ALSO, A COPY OF THE SUMMONS
        WAS MAILED ON THE _____ DAY OF _____ 20___ , IN A SEALED ENVELOPE
        WITH POSTAGE FULLY PREPAID, ADDRESSED TO THE DEFENDANT AT HIS OR HER USUAL
        PLACE OF ABODE. SAID PARTY REFUSED NAME
..X..3 SERVICE ON:  CORPORATION   COMPANY   BUSINESS   PARTNERSHIP _____
        BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT (OR INTERROGATORIES) WITH THE
        REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT.
.....4 CERTIFIED MAIL_____

(B)  MICHAEL F. SHEAHAN, SHERIFF, BY: _____, DEPUTY

    1  SEX F M/F    RACE W H  AGE 52
    2  NAME OF DEFENDANT SAFECO INSURANCE COMPANY OF ILLINOIS
        WRIT SERVED ON   SUE MADSON / AP
        THIS  14  DAY OF MAR , 20 05 TIME 10:49 A.M./P.M.

    ADDITIONAL REMARKS _____

***************************************************************************

THE NAMED DEFENDANT WAS NOT SERVED.

TYPE OF BLDG _____OFA_____          ATTEMPTED SERVICES

NEIGHBORS NAME _____       DATE      TIME A.M./P.M.

    ADDRESS _____         3-14    10:49 AZ X( )

            REASON NOT SERVED:
                    ___07 EMPLOYER REFUSAL     _____  : _____
    __01 MOVED      ___08 RETURNED BY ATTY     _____  : _____
    __02 NO CONTACT ___09 DECEASED             _____  : _____
    __03 EMPTY LOT  ___10 BLDG DEMOLISHED      _____  : _____
    __04 NOT LISTED ___11 NO REGISTERED AGT.   _____  : _____
    __05 WRONG ADDRESS ___12 OTHER REASONS     _____  : _____
    __06 NO SUCH ADDRESS ___13 OUT OF COUNTY   _____  : _____

FEE   .00   MILEAGE   .00   TOTAL   .00                              SG15

IN THE CIRCUIT COURT FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

FILED

MAR 3 1 2005

CLERK OF CIRCUIT COURT #7
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

| | |
|---|---|
| F. RYAN BEMIS d/b/a FRANK BEMIS & ASSOCIATES individually and on behalf of all others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 5-L-152 |
| SAFECO INSURANCE COMPANY OF AMERICA and SAFECO INSURANCE COMPANY OF ILLINOIS, ) ) ) ) | |
| Defendants. ) ) | |

**DEFENDANTS' COMBINED SECTION 2-619.1 MOTION TO DISMISS
OR STAY PLAINTIFF'S CLASS ACTION COMPLAINT**

Come now Defendants, Safeco Insurance Company of America and Safeco Insurance Company of Illinois (collectively "Defendants"), and move, pursuant to Sections 2-615 and 2-619 of the Illinois Code of Civil Procedure, to dismiss or stay Plaintiff's Class Action Complaint. 735 ILCS §§ 5/2-615 & 5/2-619. As grounds therefor, Defendants show the Court as follows:

1.      Plaintiff has filed a Class Action Complaint ("Complaint") directed against Defendants.

2.      Plaintiff's Complaint should be dismissed, or in the alternative stayed, pursuant to 735 ILCS §§ 5/2-615 & 5/2-619.

3.      Plaintiff's Complaint is duplicative in that it involves the same parties, the same cause, and the same counsel as two other putative class action suits previously filed on behalf of Lawrence Shipley and Mark Eavenson, both of which are currently pending before this Court.

4.     Plaintiff's suit should be dismissed or stayed pursuant to the doctrine of primary jurisdiction, pending referral of the heart of this controversy to the Illinois Department of Insurance.

5.     Plaintiff's breach of contract claim should be dismissed for failure to attach the assignment on which his claim is based in contravention of 735 ILCS § 5/2-606.

6.     Plaintiff's Complaint does not include sufficient factual allegations to support a Consumer Fraud Act claim.

7.     Plaintiff's claims against Defendant Safeco Insurance Company of America should be dismissed for lack of standing, because this Defendant did not issue the insurance policies upon which Plaintiff's claims are based.

8.     Plaintiff lacks standing to pursue a Consumer Fraud Act claim, because he is not a "consumer."

9.     Plaintiff lacks standing to pursue an unjust enrichment claim, because he has not conferred any benefit on Defendants and also because Defendants had no duty upon which such a claim could be based.

In support of this motion, Defendants rely upon the exhibits attached hereto and the supporting memorandum of law, which are hereby incorporated by reference, and all other pertinent matters of record.

WHEREFORE, Defendants respectfully request that this Court grant their Motion and dismiss Plaintiff's Class Action Complaint, or in the alternative, stay the proceedings, and that the Court grant such other and further relief as may be deemed just and proper.

ATL01/11913441v2

Respectfully submitted, this 30th of March 2005.

John L. McMullin, Esq., #1861336
Holly C. Turner, Esq., #6270635
BROWN & JAMES, P.C.
1010 Market Street; 20th Floor
St. Louis, MO  63101
Telephone:  314/421-3400
Facsimile:  314/421-3128

*Belleville Office:*
LeChien Building
120 West Main Street, 2nd Floor
Belleville, IL 62220-1502

*Of Counsel:*
Michael P. Kenny, Esq.
Cari K. Dawson, Esq.
Richard B. Holcomb, Esq.
Timothy J. Fete, Jr., Esq..
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia  30309
Telephone:  404/881-7000
Facsimile:  404/881-7777
*Attorneys for Defendants*

Page 29 of 751

ATL01/11913441v2

IN THE CIRCUIT COURT FOR THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

F. RYAN BEMIS d/b/a FRANK BEMIS &        )
ASSOCIATES individually and on behalf    )
of all others similarly situated,        )
                                         )
            Plaintiffs,                  )
                                         )
v.                                       )          No. 5-L-152
                                         )
SAFECO INSURANCE COMPANY OF              )
AMERICA and SAFECO                       )
INSURANCE COMPANY OF ILLINOIS,           )
                                         )
            Defendants.                  )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' 2-619.1 MOTION TO DISMISS OR STAY PLAINTIFF'S CLASS ACTION COMPLAINT

Defendants Safeco Insurance Company of America and Safeco Insurance Company of Illinois (collectively "Defendants") respectfully submit this Memorandum of Law in Support of Defendants' Combined Section 2-619.1 Motion to Dismiss or Stay Plaintiff's Class Action Complaint. Defendants seek dismissal or stay of Plaintiff's Class Action Complaint (the "Complaint") pursuant to sections 2-615 and 2-619 of the Illinois Code of Civil Procedure. 735 Ill. Comp. Stat. 5/2-615 & 5/2-619.

### INTRODUCTION

Plaintiff has filed suit seeking to recover based on Defendants' alleged systematic and improper reduction of Plaintiff's medical bills submitted pursuant to an automobile insurance policy issued by one of the Defendants. Despite the fact that he was not a party to, insured or covered by, or a third-party beneficiary of such policy, Plaintiff asserts breach of contract, consumer fraud, and unjust enrichment claims based on the policy. Plaintiff's claims should be dismissed or stayed for the following reasons:

- Plaintiff's suit should be dismissed or stayed pursuant to section 2-619(a)(3) of the Illinois Code of Civil Procedure, because it is duplicative. 735 Ill. Comp. Stat. 5/2-619(a)(3). Plaintiff's action involves the same parties, same cause, and the same plaintiffs' counsel as two other putative class action suits previously filed by Lawrence Shipley and Mark Eavenson, both of which are currently pending before this Court. See May v. SmithKline Beecham Clinical Labs., Inc., 304 Ill. App. 3d 242, 710 N.E.2d 460 (5th Dist. 1999).

- Plaintiff's suit should be dismissed or stayed pursuant to the doctrine of primary jurisdiction. Plaintiff is challenging the propriety of an *industry-wide practice*, specifically third-party, computer-assisted claims review and adjustment. Because the specialized expertise of the Department of Insurance is necessary to address this controversy and to provide uniform standards related thereto, the doctrine of primary jurisdiction warrants that this case be dismissed or stayed pending referral of the heart of this controversy to the Illinois Department of Insurance. Kellerman v. MCI Telecomms. Corp., 112 Ill. 2d 428, 493 N.E.2d 1045 (1986).

- Plaintiff's breach of contract claim should be dismissed for failure to attach the assignment on which his claim is based. Plaintiff is not an insured under the policy at issue, nor is he a beneficiary, either third-party or incidental. Plaintiff is in fact a medical provider that makes his claims on the basis of an alleged assignment that is neither described by nor attached to his Complaint, in contravention of 735 ILCS § 5/2-606. Plaintiff's position is entirely speculative and conjectural; he carries the burden to establish his standing to bring this action, and he has shirked this burden, warranting dismissal of his claims.

- Plaintiff's claim under the Illinois Consumer Fraud Act should be dismissed, because the Complaint does not include sufficient factual allegations to support such a claim. Plaintiff's Complaint does not adequately allege a deceptive practice by Defendants, Defendants' intent that Plaintiff relies on the deceptive practice, or that the deceptive practice proximately caused Plaintiff's injury. See Cozzie Iron & Metal Inc. v. U.S. Office Equip., Inc., 250 F.3d 570, 575-76 (7th Cir. 2001); Snap-On Inc. v. Ortiz, No. 96C2138, 1997 WL 208461, at *3 (N.D. Ill. April 21, 1997).

- Plaintiff's claims against Safeco Insurance Company of America should be dismissed, because Plaintiff lacks standing to pursue his claims against this Defendant. Because Safeco Insurance Company of America did not issue the insurance policy upon which Plaintiff's claims are based, Plaintiff has no cause of action against this Defendant. See Kittay v. Allstate Ins. Co., 78 Ill. App. 3d 335, 338, 397 N.E.2d 200, 203 (1st Dist. 1979).

- Plaintiff's claim under the Illinois Consumer Fraud Act should be dismissed, because Plaintiff lacks standing to pursue that claim. Plaintiff is not a "consumer" for purposes of the Consumer Fraud Act, and therefore does not have standing to

assert a claim under the Act. Steinburg v. Chicago Med. Sch., 69 Ill. 2d 320, 328, 371 N.E.2d 634, 638 (1977); People ex rel. Daley v. Datacom Sys. Corp., 146 Ill. 2d 1, 32, 585 N.E.2d 51, 65 (1991).

- Plaintiff's unjust enrichment claim should be dismissed for lack of standing. Plaintiff may not pursue an unjust enrichment claim, because he conferred no benefit on Defendants.  United States ex rel. Grant v. Rush-Presbyterian/St. Luke's Med. Ctr., No. 99C06313, 2001 WL 40807, at *6 (N.D. Ill. Jan 16, 2001). Plaintiff also lacks standing, because Defendants had no duty to him upon which an unjust enrichment claim can be based.  See  Lewis v. Lean Indus. Ass'n, Inc., 342 Ill. App. 3d 95, 105, 793 N.E.2d 869, 877 (1st Dist. 2003).

## STANDARD OF REVIEW

A motion under section 2-615 "attacks the legal sufficiency of the complaint by alleging defects on the face of the complaint." Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A., 186 Ill. 2d 472, 491, 713 N.E.2d 543, 552 (1999).  When considering the propriety of a motion to dismiss under section 2-615, the reviewing court must determine "whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." Jackson v. S. Holland Dodge, Inc., 197 Ill. 2d 39, 45, 755 N.E.2d 462, 466 (2001).  The purpose of a motion to dismiss under section 2-619 "is to afford litigants a means to dispose of issues of law and easily proved issues of fact at the outset of a case," and dismissal is proper when "'the claim asserted . . . is barred by other affirmative matter avoiding the legal effect of or defeating the claim.'" Zedella v. Gibson, 165 Ill. 2d 181, 185, 650 N.E.2d 1000, 1002 (1995).

## BACKGROUND

### I.      Plaintiff Bemis and his Class Action Complaint

On February 11, 2005, Plaintiff filed his Complaint against Defendants based on Defendants' alleged improper reduction of medical bills for services alleged to be covered under the medical payments provisions of various insurance policies issued by Defendants.    (Compl. at ¶ 1).    Specifically, Plaintiff asserts that despite being contractually obligated to pay all reasonable expenses incurred for necessary medical treatment, Defendants secretly and improperly used computer software to reduce payments for covered medical expenses.  (Id. at ¶¶ 1-2).

Significantly, the named Plaintiff does not assert that he was a party to, insured or covered by any insurance policy issued by Defendants.  Instead, Plaintiff maintains that he provided medical treatment to an individual covered under a casualty insurance policy issued by Defendants.  (Compl. at ¶¶ 6, 26, 28).  Plaintiff asserts that, in and before 2002, he treated Thatcher Levi for accident-related injuries covered by a casualty insurance policy issued by one of the Defendants.  (Compl. at ¶¶ 26, 28).

Plaintiff maintains that he treated his patient and charged his usual and customary rate for those services.  (Compl. at ¶ 29).  Plaintiff asserts that despite being contractually obligated under the automobile policies to pay all reasonable expenses for necessary medical treatment, Defendants improperly reduced the amount of payment to Plaintiff. (Compl. at ¶ 30).

Based on the above allegations, Plaintiff asserts claims under the Illinois Consumer Fraud Act, as well as breach of contract and unjust enrichment.  (Compl. at

¶¶ 47-64).  Specifically, Plaintiff asserts that Defendants committed consumer fraud by sending Plaintiff computer-generated reports that "misrepresented, concealed, suppressed, or omitted" Defendants' allegedly improper basis for reduction or denial of Plaintiff's submitted medical expenses.  (Compl. at ¶ 58).  Plaintiff claims that Defendants breached their insurance contract with the Plaintiff physician by not disclosing its medical claims payment procedures in the insurance contract with the insured, and by failing to pay all reasonable and necessary medical expenses.  (Compl. at ¶ 51).  Plaintiff also contends that as a result of their failure to pay amounts allegedly due Plaintiff under the insurance policy, Defendants "unjustly received and retained a benefit to the detriment of Plaintiff and the Class."  (Compl. at ¶ 62).

Plaintiff pursues his claims both individually and on behalf of the following putative class:

> All insured persons and licensed medical providers who: (a) submitted first-party medical claims to a Safeco member company pursuant to a Safeco insurance policy; (b) had their claim submitted to computer review; (c) received or were tendered an amount less than the submitted medical expenses; and (d) received or were tendered an amount less than the stated policy limits.

(Compl. at ¶ 32).  Plaintiff's action is virtually identical to two previously-filed putative class action suits currently pending before this Court.

## II.    Other Class Action Complaints Pending Before This Court

### A.    The Shipley Action

On May 22, 2003, Lawrence Shipley, a chiropractor represented by the same counsel as Plaintiff, filed an amended class action complaint against Defendants asserting breach of contract, declaratory judgment and Consumer Fraud Act claims based on the

-5-

same alleged factual scenario (the "Shipley Action").[1]  Like Plaintiff, Shipley contends

that he treated a patient covered under an insurance policy issued by Defendants and that

Defendants only paid a portion of his medical expenses.

Shipley seeks to pursue his claims both individually and on behalf of the

following putative class:

> All covered persons, their third-party beneficiaries and assignees
> (e.g., licensed medical providers), who:  (a) submitted first-party
> claims to Safeco pursuant to an accident, health, property, or
> casualty insurance policy's medical payments/expenses ("Medpay")
> provision; (b) had their claim submitted to computer review; (c)
> received or were tendered partial payment but in an amount less than
> the submitted medical expenses (based for example, on codes 36,
> 40, 43 or other similar codes); and (d) received or were tendered an
> amount less than the stated policy limits.

(Exh. A to Motion to Dismiss Complaint at ¶ 2).

B.      The Eavenson Action

On July 9, 2004, the same counsel, on behalf of chiropractors Mark J. Eavenson

and Stewart W. Smith, filed an amended class action complaint based on the same

alleged factual scenario, asserting claims under the Illinois Consumer Fraud Act and for

unjust enrichment (the "Eavenson Action").[2]  Just like Plaintiff and Shipley, Eavenson

and Smith contend that they treated patients covered under insurance policies issued by

Defendants and that Defendants only paid a portion of their medical expenses.

Eavenson and Smith seek to pursue their claims both individually and on behalf

of the same putative class that Plaintiff seeks to represent:

---

[1]  A copy of the Shipley complaint is attached to Defendants' Motion to Dismiss
Plaintiffs' Class Action Complaint as Exhibit A.

[2]  A copy of the Eavenson complaint is attached to Defendants' Motion to Dismiss
Plaintiffs' Class Action Complaint as Exhibit B.

All licensed medical providers who: (a) submitted first-party medical claims to Safeco pursuant to a Safeco Policy; (b) had their claim submitted to computer review; (c) received or were tendered an amount less than the submitted medical expenses; and (d) received or were tendered an amount less than the stated policy limits.

(Exh. B to Motion to Dismiss Complaint at ¶ 32 ).

## ARGUMENT AND CITATION OF AUTHORITY

I.    **Plaintiff's Suit Should Be Dismissed Or Stayed Pursuant To Section 2-619(A)(3) Because The Shipley And Eavenson Actions Are Pending Between The Same Parties For The Same Cause**

Section 2-619(a)(3) of the Illinois Code of Civil Procedure provides that a "defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief . . . [if] there is another action pending between the same parties for the same cause."  735 Ill. Comp. Stat. 5/2-619(a)(3).  An Illinois court has discretion to dismiss or stay an action where there is an already pending action between the same parties and involving the same cause.  Schnitzer v. O'Connor, 274 Ill. App. 3d 314, 318, 653 N.E.2d 825, 828 (1st Dist. 1995).  Here, Plaintiff's class action suit should be dismissed or stayed because it is between the same parties and for the same cause as both the Shipley Action and the Eavenson Action.

A.    Same Parties

Under section 2-619(a)(3), the parties to two actions need not be identical for dismissal to be appropriate.  See Schnitzer v. O'Connor, 274 Ill. App. 3d 314, 318, 653 N.E.2d 825, 828 (1st Dist. 1995).  Indeed for purposes of this section, two actions may be deemed to include the "same parties" even if the litigants involved in the actions differ in name or number.  See May v. SmithKline Beecham Clinical Labs., Inc., 304 Ill. App. 3d

242, 247, 710 N.E.2d 460, 464 (5th Dist. 1999) (citing <u>Schnitzer</u>, 274 Ill. App. 3d 314, 653 N.E.2d 825).  Ultimately, "the 'same parties' requirement is met if the litigants' interests are sufficiently similar." <u>Id.</u>

   For example, in <u>May</u>, the plaintiff filed a putative class action lawsuit against the defendant asserting breach of contract, unjust enrichment, common law fraud, and Consumer Fraud Act claims based on an allegedly improper billing scheme for medical laboratory tests. <u>Id.</u> at 243-44, 710 N.E.2d at 462-63.  The defendant moved to dismiss or stay the action pursuant to section 2-619(a)(3), because eight other putative class action suits based on the same alleged overall billing scheme were pending against the defendant across the country.  <u>Id.</u> at 243, 710 N.E.2d at 462.  Although the named plaintiffs in the Illinois putative class action and the other putative class actions were not identical, the court found that section 2-619(a)(3)'s same parties requirement was satisfied, because "all of the plaintiffs [had] a substantially similar interest in the litigation." <u>Id.</u> at 247, 710 N.E.2d at 464.  The court explained that the plaintiffs had substantially similar interests, because:  (i) all of the plaintiffs had paid money to the defendant; and (ii) all of the plaintiffs were seeking money damages for the defendant's allegedly improper billing procedures under the same overall scheme. <u>Id.</u>

   The same reasoning is applicable here.  While the named plaintiff in this action is not identical to the named plaintiffs in the Shipley or Eavenson Actions, the putative class in this action is subsumed within the putative classes in both the Shipley and Eavenson Actions, such that the Plaintiff here is a member of both of these putative classes.  Indeed the class definition in Eavenson is virtually identical to Plaintiff's class definition.  Moreover, as was the case in <u>May</u>, all of the plaintiffs in this action and the

Shipley and Eavenson Actions have a substantially similar interest in the litigation. Allegedly, all of the named plaintiffs provided medical treatment to individuals covered under insurance policies issued by Defendants. In addition, all of the named plaintiffs seek money damages based on an alleged overall scheme by which Defendants reduced the amount paid to medical service providers. Due to this similarity of interests, the two actions involve the "same parties" for purposes of section 2-619(a)(3).

B.     <u>Same Cause</u>

Under section 2-619(a)(3), identical causes of action or legal theories need not be asserted in both cases for the "same cause" requirement to be satisfied. <u>See</u> <u>Kapoor v. Fujisawa Pharm. Co., Ltd.</u>, 298 Ill. App. 3d 780, 786, 699 N.E.2d 1095, 1100 (1st Dist. 1998). Instead, this section "may be invoked 'where there is a substantial similarity of issues' between the two actions." <u>Id.</u> at 786, 699 N.E.2d at 1100 (citing <u>Tambone v. Simpson</u>, 91 Ill. App. 3d 865, 867, 414 N.E.2d 533, 539 (2d Dist. 1980)). This inquiry is guided by "common sense" and is generally satisfied when "the relief requested rests on substantially the same facts." <u>Id.</u>

Here, this action and the Shipley and Eavenson Actions arise out of substantially similar facts and raise substantially similar issues. In all of these cases, the plaintiffs' claims are based on allegations that Defendants engaged in an improper scheme whereby only partial payment was tendered for reasonable and necessary medical expenses covered under Defendants' insurance policies. Thus, the common sense inquiry applicable under <u>Kapoor</u> dictates that these actions involve the "same cause."

C.    The Four *Kellerman* Factors

Because Plaintiff's action involves the same parties and the same cause as the Shipley and Eavenson Actions, this Court has the discretion to dismiss or stay Plaintiff's action. See Kellerman v. MCI Telecomms. Corp., 112 Ill. 2d 428, 447, 493 N.E.2d 1045, 1053 (1986).   Under Kellerman, there are four factors that a court typically should consider when deciding whether dismissal· or a stay is warranted under section 2-619(a)(3).   These factors are: (1) comity; (2) the prevention of multiplicity, vexation and harassment; (3) the likelihood of obtaining complete relief in the foreign jurisdiction; and (4) the *res judicata* effect of a foreign judgment in the local forum.   See Crain v. Lucent Techs., Inc., 317 Ill. App. 3d 486, 495, 739 N.E.2d 639, 647 (5th Dist. 2000) (citing Kellerman, 112 Ill. 2d at 447-48, 493 N.E.2d at 1053).

While these four factors should typically be considered when deciding whether to grant a motion to dismiss or stay under section 2-619(a)(3), all four factors will not necessarily apply to each section 2-619(a)(3) motion.   See Overnite Transp. Co. v. Int'l Bhd. of Teamsters, 332 Ill. App. 3d 69, 76, 773 N.E.2d 26, 32 (1st Dist. 2002) (citing Kapoor, 298 Ill. App. 3d at 789-90, 699 N.E.2d at 1102).   In this case, the first, third, and fourth Kellerman factors are inapplicable given that this action and the Shipley and Eavenson Actions are all pending before this Court. Id.

The only remaining Kellerman factor applicable to this action weighs heavily in favor of granting Defendants' motion to dismiss or stay.   Granting Defendants' motion will prevent multiplicity, vexation and harassment.   As explained above, Plaintiff, who is represented by the same counsel as Shipley, Eavenson and Smith, has restated substantially the same issues that are already being litigated against Defendants in the

- 10 -

Shipley and Eavenson Actions. There is simply no good reason that Defendants should be required to defend the same claims in multiple actions before the same court. Indeed, the waste of resources that inevitably will occur through the duplication of efforts that will be required if all of these actions proceed simultaneously is exactly what section 2-619(a)(3) is designed to avoid. A dismissal or stay of this action is the solution best designed to avoid the multiplicity, vexation and harassment that will certainly accompany the concurrent litigation of the same issues before the same court.

D.     Additional Considerations

Recent Illinois case law suggests that in addition to the four Kellerman factors, courts should also "weigh the prejudice to the nonmovant, if the motion is granted, against the policy of avoiding duplicative litigation." Crain, 317 Ill. App. 3d at 495, 739 N.E.2d at 647 (citing May, 304 Ill. App. 3d at 246, 710 N.E.2d at 463). Here, there is no legally cognizable prejudice to Plaintiff if Defendants' section 2-619(a)(3) motion to dismiss or stay is granted. Indeed, Plaintiff's claims in the present action are already being pursued in both the Shipley and Eavenson Actions and he is a member of both putative classes — all brought by the same counsel. As noted above, the policy of avoiding duplicative litigation weighs heavily in favor of granting Defendants' motion, warranting the dismissal or stay of this action.

II.    **Plaintiff's Suit Should be Dismissed or Stayed Pursuant to the Doctrine of Primary Jurisdiction (2-619)**

To the extent that this Court determines that this action should not be dismissed or stayed in favor of the Shipley or Eavenson Actions, this Court should exercise its discretion to refer this matter to the Illinois Department of Insurance, the agency created to deal with the specialized issues relating to regulation of the insurance industry. The

doctrine of primary jurisdiction calls for dismissal or stay of this action so that the Department of Insurance can apply its particular expertise in determining the propriety of Defendants' conduct, policies, and practices.   This doctrine is especially applicable where, as here, Plaintiff takes issue with the propriety of an *industry-wide practice*, specifically third-party, computer-assisted claims review and adjustment.

The doctrine of primary jurisdiction is "concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." Kellerman, 112 Ill. 2d at 444, 493 N.E.2d at 1052 (citation omitted). This doctrine requires that special deference be given to an administrative agency, such as the Department of Insurance, "when it has a specialized or technical expertise that would help resolve the controversy, or when there is a need for uniform administrative standards." Id. at 445, 493 N.E.2d at 1166.  Such deference ensures that regulations are uniformly applied and that an agency's expertise is utilized to its full extent when a controversy arises over the application of its own regulations.   Admin. Office of Ill. Courts v. State & Mun. Teamsters, Chauffeurs and Helpers Union, Local 726, 167 Ill. 2d 180, 187, 657 N.E.2d 972, 978 (1995).

Plaintiff's challenges to Defendants' alleged reimbursement practices directly implicate the authority and expertise of the Department of Insurance, raising issues that the Director of Insurance is expressly empowered to consider and address. See, e.g., 215 Ill. Comp. Stat. 5/401 (identifying powers of the Director, including the powers to enforce all insurance laws of this State and to promulgate related regulations); 5/425 (granting power to Director to investigate and determine whether an insurer has engaged in any unfair or deceptive practice); 5/154.6 (identifying acts constituting improper

claims practices, such as "[r]efusing to pay claims without conducting a reasonable investigation based on all available information").

Here, Plaintiff challenges an industry-wide practice of the heavily regulated field of insurance. The practice at issue, third-party, computer-assisted bill review and adjustment, is specific to the industry and requires special expertise. In such a circumstance, the need for uniform administrative standards is especially great. Assuming Plaintiff's claim that there is something inappropriate about this industry-wide practice (which Defendants vigorously deny), these issues are best considered by the authority empowered by this State to regulate industry-wide conduct. Defendants deserve to be on a level playing field with their competitors in the industry – subject to billing and reimbursement rules that are neither more stringent, nor more lenient, than those applicable to its competitors. Only uniform administrative standards can achieve that result. Those simply cannot be promulgated in the course of this proceeding, but the Director of Insurance is specifically authorized to promulgate such standards. See 215 Ill. Comp. Stat. 5/401(a).

Because the specialized expertise of the Department of Insurance is necessary to address this controversy and to provide uniform standards related thereto, the doctrine of primary jurisdiction warrants that this case be dismissed or stayed pending referral of the heart of this controversy to the Illinois Department of Insurance. See Kellerman, 112 Ill. 2d at 444, 493 N.E.2d at 1052.

III.   **Plaintiff's Allegations Are Insufficient To Support Claims For Breach Of Contract Or Consumer Fraud (2-615)**

    A.   <u>Plaintiff Lacks Standing To Bring His Breach Of Contract Claim Because He Has Not Established The Validity Of The Alleged Assignment</u>

A claim cannot proceed where the plaintiff lacks standing.  <u>See, e.g.</u>, <u>Potter v. Ables</u>, 242 Ill. App. 3d 157, 158, 610 N.E.2d 159, 160 (5th Dist. 1993); <u>Kostur v. Indiana Ins. Co.</u>, 192 Ill. App. 3d 859, 863-65, 549 N.E.2d 685, 688-90 (1st Dist. 1989).  Without standing, a plaintiff may not even properly invoke the subject matter jurisdiction of the court.  <u>See, e.g.</u>, <u>Helmig v. John F. Kennedy Cmty. Consol. Sch. Dist. No. 129</u>, 241 Ill. App. 3d 653, 659, 610 N.E.2d 152, 156 (3d Dist. 1993).

Plaintiff is a licensed chiropractor who claims to have provided treatment to Thatcher Levi, an insured for whom Defendants paid medical expenses in connection with an automobile insurance policy in 2002.  In contravention of 735 ILCS § 5/2-606, which requires parties to attach written instruments that form the basis of their claims to pleadings as exhibits, Plaintiff has attached only a copy of the explanation of review of the bill for his treatment of Mr. Levi.  (<u>See</u> Compl. at Exh. A).  Plaintiff has not attached a copy of the insurance contract, nor has Plaintiff alleged that he is a party to the contract.

Because Plaintiff is not a party to the insurance contract, Plaintiff predicates his standing in this matter on an alleged assignment of claim from Mr. Levi.  (Compl. ¶ 26, 28).  Yet, in contravention of 735 ILCS § 5/2-606, Plaintiff has failed to attach the allegedly "valid assignment of claim" that is the only basis for his appearance in this suit.  <u>See</u> 11 Lee R. Ross & Thomas F. Segall, <u>Couch on Insurance</u> § 158.25 (3d ed. 2003) (noting that provisions in insurance contract creates no liability on part of the insurer to the person or entity rendering medical services).  Because by Plaintiff's own admission

his only standing in this matter rests on an alleged assignment that he has failed to attach

in violation of 735 ILCS § 5/2-606, Defendants respectfully request that Plaintiff's claims

be dismissed with prejudice.[3]

> **B.**     <u>Plaintiff's Allegations Are Insufficient to Support a Claim Under the Consumer Fraud Act (2-615)</u>

While a complaint "need not exhaustively detail the basis for each claim, it must

contain sufficient direct or inferential allegations of all material elements to sustain a

recovery under some viable legal theory." <u>Zinser v. Rose</u>, 245 Ill. App. 3d 881, 883, 614

N.E.2d 1259, 1261 (3rd Dist. 1993).   To adequately state a claim under the Consumer

Fraud Act, Plaintiff must establish the following elements:  (1) a deceptive act or practice

by Defendants;  (2) Defendants' intent that Plaintiff rely on the deception;  (3) that the

deception occurred in the course of trade and commerce;  and (4) that the deceptive act

proximately caused Plaintiff injury. <u>Cozzie Iron & Metal Inc. v. U.S. Office Equip., Inc.</u>,

250 F.3d 570, 575-76 (7th Cir. 2001) (citing <u>Connick v. Suzuki Motor Co.</u>, 174 Ill. 2d

482, 501, 675 N.E.2d 584, 593 (1997)).  "[A] complaint alleging a violation of consumer

fraud must be pled with the same particularity and specificity as that required under

common law fraud."  <u>Connick</u>, 174 Ill. 2d at 501, 675 N.E.2d at 593.   Under this

standard, Plaintiff may not substitute conclusory statements for allegations of fact.

---

[3] To the extent that Plaintiff contends that he is a third-party beneficiary to the insurance contract, this contention must fail.  Plaintiff is not third-party beneficiary of the insurance policy, as there is no allegation or evidence that the contract was "undertaken for the plaintiff's direct benefit."  <u>Caswell v. Zoya Int'l, Inc.</u>, 274 Ill. App. 3d 1072, 1074-75, 654 N.E.2d 552, 554 (1st Dist. 2000).  Accordingly, Plaintiff can only have standing to assert such a claim if he had received an assignment of his patients' rights under the insurance contract.

Hoffman v. Allstate Ins. Co., 85 Ill. App. 3d 631, 634, 407 N.E.2d 156, 158 (2d Dist. 1980).

Plaintiff's Complaint does not include sufficient factual allegations to establish the above-listed elements.  First, Plaintiff does not adequately allege a deceptive business practice.  Plaintiff's allegation that Defendants' written reports were deceptive rests entirely on the premise that Defendants' reduction of Plaintiff's submitted medical expenses violated the insurance policy that allegedly covered his patient's injuries.  However, Plaintiff was not a party to, insured or covered by, or a third-party beneficiary of this policy.  Consequently, Defendants owed no duty to Plaintiff, and the issuance to Plaintiff of reports explaining the basis of payment reductions does not constitute a deceptive practice actionable under the Act.[4]  See Snap-On Inc. v. Ortiz, No. 96C2138, 1997 WL 208461, at *3 (N.D. Ill. April 21, 1997) (holding that there was "no deceptive practice" where alleged deception was predicated on violation of contract to which the plaintiff was not a party or third-party beneficiary).  For the same reasons, Plaintiff cannot adequately plead the elements of intentional reliance or proximate causation. Because Plaintiff's allegations are wholly and incurably insufficient to support a claim under    the    Consumer    Fraud    Act,    that    claim    should    be    dismissed.

---

[4] Moreover, Defendants' alleged use of a third party, computer-assisted claims review process does not itself constitute a deceptive or improper practice.  Indeed, other courts have specifically rejected challenges to computer-assisted bill review processes that rely on a formula to assess the reasonableness of charges.  See, e.g., Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 257 Mich. App. 365, 381-82, 670 N.W.2d 569, 579 (2003) (holding that bill review process that utilized a "formula . . . based on survey of charges by other health care providers for same services" was not unlawful) (emphasis omitted).

IV.     **Plaintiff's Claims Should be Dismissed for Lack of Standing (2-619)**

     A.     <u>Plaintiff's Claims Against Safeco Insurance Company Of America Should Be Dismissed For Lack Of Standing Because The Named Defendant Did Not Issue The Policy Under Which Plaintiff Sues</u>

Plaintiff's claims against Safeco Insurance Company of America should be dismissed for lack of standing. Although Plaintiff failed to attach the insurance policies upon which his claims are based to the Complaint, Safeco's records indicate that Safeco Insurance Company of America did not issue the policy.[5]

It is well-settled under Illinois law that while the named plaintiff in a putative class action may "represent all those suffering an injury similar to his own inflicted by the defendant responsible for the plaintiff's injury . . . he cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands be suffered no injury." <u>Kittay v. Allstate Ins. Co.</u>, 78 Ill. App. 3d 335, 339, 397 N.E.2d 200, 203 (1st Dist. 1979); <u>see also Glazewski v. Coronet Ins. Co.</u>, 108 Ill. 2d 243, 254, 483 N.E.2d 1263, 1268 (1985); <u>Landesman v. Gen. Motors Corp.</u>, 72 Ill. 2d 44, 48-49, 377 N.E.2d 813, 814-15 (1978). Safeco Insurance Company of America did not issue the policy that is the basis of all of Plaintiff's claims. Plaintiff lacks standing to proceed with his claims against Safeco Insurance Company of America because Plaintiff simply has no relationship, contractual or otherwise, with this Defendant, either individually, or as the alleged representative of a putative class. For this reason, Plaintiff's claims against Safeco Insurance Company of America should be dismissed.

---

[5] Defendants will supplement the present motion with a supporting affidavit.

**B.**     Plaintiff's Consumer Fraud Claim Should Be Dismissed For Lack Of
Standing Because The Consumer Fraud Act Does Not Apply To Him

The purpose of the Consumer Fraud Act is "to protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Steinburg v. Chicago Med. Sch., 69 Ill. 2d 320, 328, 371 N.E.2d 634, 639 (1977). "Although the [Act] provides a right of action to '[a]ny person who suffers damage as a result of a violation, the [S]upreme [C]ourt of Illinois has held that only "consumers" have standing to sue under the statute.'" Brown v. Veile, 198 Ill. App. 3d 513, 518, 555 N.E.2d 1227, 1231 (5th Dist. 1990) (citing Steinburg, 69 Ill. 2d 320, 371 N.E.2d 634 (1977)); see also People ex rel. Daley v. Datacom Sys. Corp., 146 Ill. 2d 1, 32, 585 N.E.2d 51, 65 (1992) ("A person's status as a consumer relates to his or her standing to sue as an individual under the Consumer Fraud Act."). Thus, "[w]hether a party has standing to sue under the [Consumer Fraud Act] is dependent upon whether that party is a consumer." Brown, 198 Ill. App. 3d at 518, 555 N.E.2d at 1231 (citing People ex rel. Fahner v. Hendrich, 108 Ill. App. 3d 83, 438 N.E.2d 924 (2d Dist. 1982)); Prime Leasing, Inc. v. Kendig, 332 Ill. App. 3d 300, 313, 773 N.E.2d 84, 96 (1st Dist. 2002); Norton v. City of Chicago, 267 Ill. App. 3d 507, 509-10, 642 N.E.2d 839, 841 (1st Dist. 1994); McCarter v. State Farm Mut. Auto. Ins. Co., 130 Ill. App. 3d 97, 102, 473 N.E.2d 1015, 1019 (3d Dist. 1985).

1.     *Plaintiff Lacks Standing under the Consumer Fraud Act Because He Is Not A "Consumer"*

Plaintiff lacks standing to pursue his Consumer Fraud Act claim because he is not a "consumer." Under the Act, "a consumer is defined as 'any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade

or business but for his use or that of a member of his household.'"  Prime Leasing Inc.,

332 Ill. App. 3d at 313, 773 N.E.2d at 95 (quoting 815 Ill. Comp. Stat. 505/1).  Because

Plaintiff did not purchase or contract to purchase insurance coverage from Defendants, he

does not constitute a "consumer" within the meaning of the Consumer Fraud Act.

        2.     *Plaintiff Cannot Rely On the Consumer Nexus Test to Cure His Lack of Standing*

Plaintiff attempts to avoid this deficiency by alleging that "[Defendants'] business

activities with [Plaintiff] involve trade or commerce and are addressed to the market

generally and/or otherwise implicate consumer protection concerns."  (Compl. at ¶ 56).

Plaintiff is apparently relying on a line of cases from federal and state courts that have

permitted claims under the Consumer Fraud Act to be asserted by non-consumers if they

"meet the consumer nexus test by alleging that the conduct involves trade practices

directed to the market generally or otherwise relates to consumer protection issues."

Stepan Co. v. Winter Panel Corp., 948 F. Supp. 802, 806 (N.D. Ill. 1996); see, e.g., Bank

One Milwaukee v. Sanchez, 336 Ill. App. 3d 319, 322-23, 783 N.E.2d 217, 220 (1st Dist.

2003).  However, the standard set forth in these cases must be rejected, because it

conflicts with the previously discussed binding precedent from the Supreme Court of

Illinois that specifically limits standing to assert consumer fraud claims to "consumers."

People ex rel. Daley, 146 Ill. App. 3d at 32, 585 N.E.2d at 65, Steinburg, 69 Ill. 2d at 328,

371 N.E.2d at 638.[6]

---

[6] Moreover, even if the "consumer nexus" approach were applicable, Plaintiff would still lack standing to pursue a Consumer Fraud Act claim.  Plaintiff's bare allegation that Defendants' business activities were addressed to the market or otherwise implicate consumer concerns is insufficient to establish the requisite nexus for standing under the "consumer nexus" approach.  See *infra* Section III.B.  Furthermore, Plaintiff cannot cure this defect by repleading.  Because Plaintiff is not a "consumer," it is impossible to

C.      Plaintiff's Unjust Enrichment Claim Should be Dismissed For Lack of
        Standing

In order to "recover under a theory of unjust enrichment in Illinois, 'the plaintiff

must show that the defendant voluntarily received a benefit from the plaintiff which

would be unjust for the defendant to retain without paying for it.'" United States ex rel.

Grant v. Rush-Presbyterian/St. Luke's Med. Ctr., No. 99C06313, 2001 WL 40807, at *6

(N.D. Ill. Jan 16, 2001) (citing AA Sales & Assocs., Inc. v. JT & T Prods. Corp., 48 F.

Supp. 2d 805, 807 (N.D. Ill. 1999)); see also Hayes Mech., Inc. v. First Indus., L.P., No.

1-02-1191, 2004 WL 1322410, at *6 (Ill. App. Ct. 1st Dist. June 14, 2004) (holding that

"the plaintiff must show that valuable services or materials were furnished by the

plaintiff, received by the defendant, under circumstances which would make it unjust for

the defendant to retain the benefit without paying") (citations omitted).

1.      *Plaintiff Has Conferred No Benefits on Defendants*

Before a cause of action for unjust enrichment will exist, "there must be some

independent basis which establishes a duty on the part of the defendant to act and the

defendant must have failed to abide by that duty." Id.  Plaintiff has not conferred any

benefit on Defendants.    The only benefit received by Defendants was insurance

premiums paid by the *insured* – the patient treated by Plaintiff.  Assuming arguendo that

Defendants retained some portion of this benefit unjustly, they have done so at the

expense of the insured, not Plaintiff.  Accordingly, Plaintiff lacks standing to pursue an

_____

discern what impact, if any, Defendants' allegedly deceptive reports have on consumer
interests.    In short, Plaintiff lacks standing to pursue a Consumer Fraud Act claim,
"because the consumer connection is far too tenuous to form the necessary nexus."
Stepan Co., 948 F. Supp. at 807.

unjust enrichment claim against Defendants.  See  Rush-Presbyterian/St. Luke's Med.
Ctr., 2001 WL 40807, at *6 ("[The plaintiff] has no standing to bring an unjust
enrichment claim against [the defendant] because the benefits at issue, federal health
insurance payments, were conferred by the United States, not the [plaintiff], and if they
were unjustly retained it would be at the Government's expense, not [the plaintiffs'].")
(citation omitted).

> 2.    *Defendants Owe No Duty to Plaintiff*

Plaintiff also lacks standing to assert an unjust enrichment claim, because he
cannot establish that Defendants owed him any duty.[7]  The only potential source of such
a duty – and the source on which Plaintiff's claim clearly relies – is the insurance policy.
However, as previously discussed, Plaintiff is not a party to, insured or covered by, or a
third-party beneficiary of this insurance contracts.  Thus, this contract cannot give rise to
any duty owed by Defendants to Plaintiff sufficient to support an unjust enrichment
claim.  To hold otherwise would allow the equitable theory of unjust enrichment to
swallow the law of contract specific to third-party beneficiaries.

In short, Plaintiff's unjust enrichment claim is but a defective third-party
beneficiary claim in disguise.  Because Illinois law does not support the recognition of
such a claim, it must be dismissed.

---

[7] Moreover, dismissal would be no less appropriate even if Plaintiff could rely on duties
arising under the insurance contracts.  It is well-settled under Illinois law that "where
there is a specific contract which governs the relationship of the parties, the doctrine of
unjust enrichment has no application."  People ex rel. Hartigan v. E & E Hauling, Inc.,
153 Ill. 2d 473, 497, 607 N.E.2d 165, 177 (1992); see also  Cooper v. Durham Sch.
Servs., No. 03C2431, 2003 WL 22232833, *7 (N.D. Ill. Sept. 22, 2003).  Thus, even if
Plaintiff could pursue claims based on the insurance policies, he cannot proceed with his
unjust enrichment claim.

## CONCLUSION

For all of the foregoing reasons, Defendants Safeco Insurance Company of America and Safeco Insurance Company of Illinois respectfully request that this Court grant their Combined Section 2-619.1 Motion to Dismiss or Stay Plaintiff's Class Action Complaint.

Respectfully submitted, this 30th of March 2005.

_____
John L. McMullin, Esq., #1861336
Holly C. Turner, Esq., #6270635
BROWN & JAMES, P.C.
1010 Market Street; 20th Floor
St. Louis, MO 63101
Telephone:  314/421-3400
Facsimile:   314/421-3128

*Belleville Office:*
LeChien Building
120 West Main Street, 2nd Floor
Belleville, IL 62220-1502

*Of Counsel:*
Michael P. Kenny, Esq.
Cari K. Dawson, Esq.
Richard B. Holcomb, Esq.
Timothy J. Fete, Jr., Esq..
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309
Telephone:  404/881-7000
Facsimile:  404/881-7777
*Attorneys for Defendants*

## Certificate of Service

The undersigned, hereby certifies that a true copy of the foregoing document, on behalf of Defendants Safeco Insurance Company of America and Safeco Insurance Company of Illinois, by and through one of their attorneys, Brown & James, P.C., was served this 30th day of March 2005, via first-class mail, postage prepaid, upon the following counsel of record.

Paul M. Weiss #6217260
Jonathan B. Piper # 6196071
William M. Sweetnam # 6226203
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
Ph. 312.220.0000

Bradley M. Lakin #6243318
Richard J. Burke #6255504
Gary E. Peel #02166259
Jeffrey A. J. Millar #6271673
**THE LAKIN LAW FIRM, P.C.**
300 Evans Avenue, P.O. Box 229
Wood River, Illinois 62095-1127
Ph. 618.254.1127

Timothy F. Campbell # 378526
**CAMPBELL & MCGRADY LAW OFFICE**
3017 Godfrey Road
Godfrey, Illinois 62035

Holly C. Turner

#7754767

- 23 -

# EXHIBIT A

**(Lawrence Shipley's First Amended Class Action Complaint)**

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

LAWRENCE SHIPLEY, D.C., individually and
on behalf of others similarly situated,

       Plaintiffs,

   v.          No. 03 L 246

AMERICAN STATES INSURANCE
COMPANY, SAFECO INSURANCE
COMPANY OF AMERICA and SAFECO
INSURANCE COMPANY OF ILLINOIS,
individually and on behalf of all similarly
situated Safeco entities,

   Defendants.

## FIRST AMENDED CLASS ACTION COMPLAINT

  Plaintiff, on behalf of himself and others similarly situated, and based upon the

investigation of counsel, alleges as follows:

### INTRODUCTION

  1.  This is a proposed nationwide, or alternatively, statewide, class action complaint

brought by Lawrence Shipley, D.C. ("Shipley" or "Plaintiff"), individually and on behalf of

others similarly situated, against American States Insurance Company, Safeco Insurance

Company of America, Safeco Insurance Company of Illinois and similarly situated Safeco

entities (collectively, "Safeco" or "Defendants"). The basis of the action is Safeco's systematic

and improper computer reduction of reasonable expenses for necessary medical services

provided by licensed medical providers covered under medical payments provisions of accident,

health, property and casualty insurance policies written by Safeco, all of which provide

standardized coverage for medical bills. Based upon its unilateral computer bill reduction,

Safeco has failed to pay Plaintiff and others similarly situated the full amount of their reasonable

medical expenses for necessary medical services provided/incurred by them and covered by

policies written by Safeco.

2.    This is a class action brought by Plaintiff individually, and on behalf of the

following proposed classes:

**National Plaintiff Class**:

All covered persons, their third party beneficiaries and assignees
(*e.g.*, licensed medical providers), who: (a) submitted first-party
claims to Safeco pursuant to an accident, health, property or
casualty insurance policy's medical payments/expenses
("Medpay") provision; (b) had their claim submitted to computer
review, (c) received or were tendered partial payment but in an
amount less than the submitted medical expenses (based, for
example, on codes 36, 40, 43 or other similar codes), and (d)
received or were tendered an amount less than the stated policy
limits.

**(Alternative) Illinois Plaintiff Class**:

All covered persons, their third party beneficiaries and assignees
(*e.g.*, licensed medical providers), who: (a) submitted first-party
claims to Safeco pursuant to an accident, health, property or
casualty insurance policy's Medpay provision; (b) had their claim
submitted to computer review, (c) received or were tendered partial
payment but in an amount less than the submitted medical
expenses (based, for example, on codes 36, 40, 43 or other similar
codes), and (d) received or were tendered an amount less than the
stated policy limits.

**Safeco Defendant Class**:

All Safeco entities that: (a) sell accident, health, property and
casualty insurance policies with coverage for medical
payments/medical expenses ("Medpay coverage"), and (b) used
computer reports to adjust Medpay claims.

Excluded from the Plaintiff Class are workers compensation medical payment claims submitted

in states with statutory or regulatory reimbursement fee schedules and personal lines automobile

insurance medical payment or personal injury protection claims submitted in fee schedule states

Page 55 of 751

(*i.e.,* New York, Utah, Hawaii, New Jersey and Pennsylvania).  Also excluded from the Class are

members of the Illinois state judiciary, Safeco, any entity in which it has a controlling interest,

and their officers and directors and the members of their immediate families.  Finally, excluded

from the statutory fraud class are persons who reside in the following states (because these state

statutes expressly exclude insurance transactions from statutory coverage):  Alabama, Alaska,

Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Missouri, New

Hampshire, Rhode Island, South Carolina, Utah, Vermont, Virginia and Wisconsin.

      3.     This case involves the issues of "reasonableness" and "necessity" described in ¶ 5.

This case does not involve the issue of relatedness, however, because with respect to each class

member, Safeco paid the claim in part, thus conceding that the claim (such as Plaintiff's) was

related to an occurrence covered by the Safeco policy.

      4.     With respect to each class member, Safeco's policies promised the following

medical expenses/payment coverage in the event of a covered claim:

> We will pay reasonable expenses for ...necessary
> medical services.

      5.     Notwithstanding Safeco's contractual promise to pay all reasonable expenses for

necessary medical services, Safeco, unbeknownst to class members, used a computerized

database program to systematically (and secretly) cap payments to Plaintiff and other members of

the Class.  First, Safeco used the computer to cap individual payments for covered medical

expenses by denying medical expenses as unreasonable – using code "40," "UCR 85" (and

similar codes) – whenever the expenses purportedly exceeded a secret percentile (such as the

"85th percentile") of the rates for usual, customary and reasonable charges purportedly made by

medical providers in the region where the treatment was rendered.  This is the "reasonableness

Page 56 of 751

-3-

issue" referenced in ¶ 3.  Second, Safeco used the computer program to cap payments by

implementing automatic computer rules that deny medical treatment as not medically necessary –

using, for example, code "43" (and similar codes) – by, for example: (1) "bundling": in which

Safeco arbitrarily and without prior notice reduces payments by combining two or more

procedures and paying only for one, and/or (2) "downcoding": in which Safeco denies or

diminishes the claim payment by arbitrarily, and without prior notice, changing the code assigned

to a particular service to a less expensive one.  In other words, Safeco used a computer database

to assess the necessity of treatment, rather than using a medical provider's analysis of the

patient's injury to assess the necessity of treatment.  This is the "necessity issue" referenced in

¶ 3.[1]

> 6.      Safeco's imposition of a secret fixed ceiling/cap on its individual bill payments of

"reasonable" medical expenses is not disclosed or otherwise referred to in the policies under

which Plaintiff and other members of the Class were covered.[2]  Nor does Safeco reserve to itself

the right to use a computer to unilaterally and retroactively deny licensed medical treatment as

not medically necessary, in each instance the computer makes a medical decision, without

personal or physical examination of the patient, and contradicts the treating medical provider.

> 7.      Based on Safeco's systematic scheme and common course of conduct to limit

medical payments to an undisclosed ceiling/cap with the potential for further retroactive

reductions, Plaintiff make claims herein on behalf of himself and all others similarly situated for

breach of contract, declaratory judgment and for violation of the Illinois Consumer Fraud and

---

[1]      Though discovery has not yet begun, it is obvious that computer claims reductions based on certain codes will need to be excluded from the class – e.g., those codes pertaining to duplicate billing or to service being unrelated to the accident.  Once discovery is completed, Plaintiff will confer with defendant Safeco, and file an appropriate stipulation with the Court.

[2]      Safeco's policies usually contain per occurrence policy limits, for example, $10,000 per occurrence.  Here, the Class includes only persons whose claims were denied in part within policy limits.

Deceptive Business Practices Act, 815 ILCS 505/1 et seq., and the substantially similar laws of other states.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over Safeco pursuant to 735 ILCS 5/2-209 because plaintiff is a citizen of Madison County, Illinois and the wrongful conduct alleged herein occurred in part within Madison County, Illinois.  The incident that forms the basis for plaintiff's claims occurred in Madison County, Illinois and the disputed medical treatment was incurred from plaintiff, a licensed medical provider/assignee/third party beneficiary, residing in Granite City, Madison County, Illinois.  Safeco's scheme directly affected citizens of Madison County, Illinois, whose Medpay claims were reduced through breach of contract, fraud and use of biased computer reports.  Safeco has, within the relevant time period, transacted substantial business in Madison County, Illinois.  Venue is proper because the transaction or some part thereof out of which these causes of action arose occurred in this County.  *See* 735 ILCS 5/2-101-103.

9.      There is no federal jurisdiction over this case because no federal question is asserted and plaintiff's individual claim is worth less than $75,000, inclusive of all damages and fees.  Plaintiff expressly disclaims any individual recovery in excess of $75,000.  Plaintiff's state law causes of action are not federally preempted and mandate that this action be heard in an Illinois state forum.

Page 58 of 751

## **PARTIES**

10.   **Plaintiff Lawrence Shipley, D.C.**  Plaintiff Lawrence Shipley, D.C. ("Plaintiff")

is a natural person and, at all times relevant hereto, a citizen of Illinois.

11.   At all times relevant hereto, Plaintiff was the assignee / third party beneficiary of,

among others, a person (Ms. Jane Podraza) who was covered under a form Safeco insurance

policy (in particular, a business owners policy) containing medical expense/payments coverage,

which provided in relevant part:

A.   **COVERAGES**

     1.   **Business Liability**

**************

     2.   **Medical Expenses**

          a.   We will pay medical expenses as described below for "bodily injury" caused by an accident

               (1)   On premises you own or rent;

               (2)   On ways next to premises you own or rent; or

               (3)   Because of your operations.

          provided that:

               (a)   The accident takes place in the "coverage territory" and during the policy period;

               (b)   The expenses are incurred and reported to us within one year of the date of the accident; and

               (c)   The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

Page 59 of 751

b.           We will make these payments regardless of fault.  These

payments will not exceed the Limit of Insurance.  We will

pay **reasonable expenses** for:

(1)      First aid at the time of an accident;

(2)      **Necessary medical**, surgical, x-ray and dental **services**,

including prosthetic devices; and

(3)      Necessary ambulance, hospital, professional nursing and

funeral services.

**B.      EXCLUSIONS**

1.       **Applicable to Business Liability Coverage –**

This insurance does not apply to:

a.           "Bodily injury" or "property damage" expected or intended

from the standpoint of the insured.  This exclusion does not

apply to "bodily injury" resulting from the use of

reasonable force to protect persons or property.

* * * * * * * * * *

12.       Plaintiff is a doctor of chiropractic medicine licensed to practice in Illinois.

13.       Plaintiff was the medical provider for at least one Safeco covered person (*i.e.*, Ms.

Jane Podraza) who, at all times relevant hereto, was covered under a Safeco insurance policy that

provided coverage for payment of medical expenses ("Medpay coverage").

14.       In and before 1997, Plaintiff treated the Safeco covered person under the above-

described insurance policy for personal injuries sustained in an accident, which was covered by

the insurance policy, and for which Plaintiff obtained a valid assignment of claim.  Plaintiff, a

licensed medical provider, provided reasonable medical expenses for necessary medical

Page 60 of 751

-7-

treatment, totaling over one thousand dollars.  Plaintiff billed Safeco his usual and customary

charge (*i.e.*, the rate he charged other patients for the same services) for the particular medical

services provided.

15.     Notwithstanding Safeco's contractual promise to pay to or on behalf of Plaintiff

all reasonable expenses incurred for necessary medical services, Safeco limited the amount of

payment to Plaintiff (as it did to every Class member) to a secret (and artificial) cap generated by

the computer software used by Safeco, which as designed enabled Safeco to limit per-bill,

reasonable medical payments to a predetermined, maximum percentile (such as the "85[th]

percentile"), and to apply particular computer codes to retroactively deny necessary medical

treatment.

16.     To create the appearance of legitimacy for the reduced payment, Safeco sent

Plaintiff (and other Class members) computer generated medical audit reports – commonly called

"Explanation of Review" or "Explanation of Benefits" ("EOR" or "EOB") – that set forth the

"Charges," "Reduction," and the "Allowance," along with particular "Reason [Code(s)]" that set

forth the purported basis for the reduced payment.  (Copies of Plaintiff's EORs are attached

hereto as Exhibit A).

17.  .   As intended by Safeco, the computer software consistently produced EORs which,

on a per-bill basis, recommend that Safeco partially reduce Medpay claims (like Plaintiff's)

within policy limits.  For example, for one charge on November 15, 1996, the $80.00 charge, for

CPT Code 99214, was down-coded and paid as CPT Code 99213 in the amount of $53.55.  (See

Exhibit A – "Reasons Code 43 40").  For another charge, on February 5, 1997, the $65.00

charge, for CPT Code 99213, was reimbursed at $53.55, and accompanied by Reason Codes "40"

and "36."

At the bottom of the Explanation of Review is the following:

RC 40  This procedure was reduced because the charges exceeded an amount that would appear reasonable when the charges are compared to the charges of other providers within the same geographic area.

RC 43  The level of service rendered this patient exceeds the level that would appear to be appropriate for the conditions being treated.

RC 36  THE NUMBER OF TIMES THAT THIS PATIENT IS BEING SEEN IS APPROACHING A NUMBER OF VISITS THAT WOULD APPEAR TO BE UNREASONABLE FOR THE CONDITIONS FOR WHICH THE PATIENT IS BEING TREATED.  PLEASE FURNISH DOCUMENTATION OF MEDICAL NECESSITY.

18.     At all times in which he provided treatment, Plaintiff's course of treatment followed his standard protocol and Plaintiff charged his usual and customary charges, which were within the customary amounts charged by other medical providers, for similar treatment, within the same geographic area.  Plaintiff, a licensed medical provider, provided the medical treatment in good faith and pursuant to his usual and customary procedures.

19.     Notwithstanding its promise to pay all reasonable medical expenses incurred for necessary medical services, Safeco reduced the amount paid to Plaintiff (and the Class) according to the software's parameters, leaving Plaintiff with unpaid medical expenses and improperly saving Safeco money.

20.     Safeco partially refused to pay Plaintiff's (and each class member's) reasonable and necessary medical expenses, even though: (a) the policy did not require that Plaintiff (nor any class member) pre-authorize medical treatment or expense in order for it to be covered by the policy; (b) the policy did not contain a per-bill limit or cap, but only a per-occurrence cap (such as $10,000); (c) the disputed medical treatment was dictated and called for in good faith by licensed medical professionals and there was no allegation of fraud, bad faith or mistake; and (d)

Page 62 of 751

the disputed medical treatment and expense had already been incurred, was related to the covered occurrence (as evidenced by Safeco's partial payment under the policy) and within the policy limits.

21.     Safeco's systematic reduction of medical claims is usually less than $1,000 per claim, such that an individual action against Safeco is cost prohibitive.  Consequently, a Class claim pursuing damages in the aggregate is an appropriate, and, for all practical purposes, the only meaningful means of seeking relief.

22.     **The Safeco Defendants.**  Defendants American States Insurance Company, Safeco Insurance Company of America, and Safeco Insurance Company of Illinois, individually and on behalf of all similarly situated Safeco entities (collectively, "Safeco") are foreign corporations (except Safeco Insurance Company of Illinois, which, on information and belief, is an Illinois corporation) doing business in Madison County, Illinois and throughout the United States.

23.     Safeco implements its wrongful scheme (the use of biased computer reports to audit and reduce Medpay claims) and undisclosed per-bill limitations/caps on policy benefits, and computer rules to deny necessary medical treatment, from corporate headquarters, which ensures the scheme is implemented in all of the markets where Safeco and related insurance companies sell insurance policies with Medpay coverage.

Page 63 of 751

-10-

## OVERVIEW

24.     At the expense of Plaintiff and the Class, Safeco has maintained what could best be described as a "silent HMO" / managed care program throughout the Class period.  Plaintiff analogizes Safeco's Medpay insurance coverage to a managed care program because Safeco has imposed automated, rigid health care cost controls on submitted medical claims, despite disclosing none of this in its form insurance policies and despite its unconditional promise to pay, within policy limits, all reasonable expenses incurred for necessary medical treatment.

25.     Through an undisclosed uniform scheme and common course of conduct, Safeco systematically reduced medical payments through the use of biased computer software.  The software is "biased" because it was specifically designed to save Safeco money by reducing the amount of benefits paid under medical payments / medical expenses coverage written by Safeco, and because it is programmed to consistently generate computer reports (*i.e.*, EORs or Explanation of Review) which, based on particular computer codes (like "40" and "43"), recommend partial payment of submitted claims.

## SUBSTANTIVE ALLEGATIONS

26.     At various times, Plaintiff and the proposed Plaintiff Class submitted medical bills to Safeco for payment.  In response, Safeco, based on a computer report, wrongfully reduced the medical bills to a rate lower than the licensed medical provider's usual and customary charges, leaving the patient with a debt of the medical provider owed money.  To accomplish this reduction, Safeco used a computerized, cost containment program that contained a biased, inaccurate fee schedule to reduce medical bills on a systematic basis.  Specifically, Safeco engaged, and, on information and belief, continues to engage, in conduct that is designed to arbitrarily reduce the rightful benefits due.  The reductions complained of, for example, are those

Page 64 of 751

-11-

in which Safeco's medical costs and medical utilization database assesses: (a) code 40 (and similar codes), a designation that a medical charge exceeds the "usual, customary and reasonable" amount for the procedure in the region where the service was provided, without taking into account the licensed provider's usual and customary charges, and other factors; or, (b) codes 43 (and similar codes), which designate that a medical charge is being denied as not medically necessary because Safeco's computer database has unilaterally determined that the licensed medical treatment is not appropriate, by, for example, retroactively bundling or downcoding the charge, or disputing the good faith medical provision of the licensed medical provider without personally or physically examining the patient.

27.      Safeco, by way of its usage of a certain licensed computer program(s), systematically reduced the class's medical bills without consideration of the age or condition of the patient, or the special qualifications or certification of the healthcare provider. Independent, fair and skilled adjusting practices are thereby removed from Safeco's claims systems to the detriment of the covered claimant. Safeco has taken such deductions without having any direct knowledge of the data used to determine, for example, "reasonable" medical charges in the region where the service was provided.

28.      Safeco has knowingly and intentionally engaged in such practices for the purpose of reducing its overall claims and loss ratios and payments expenditures. Furthermore, this practice is designed to discourage Safeco claimants from pursuing legal action against Safeco.

29.      Safeco's arbitrary cost containment policy of reducing medical charges interferes and conflicts with the doctor-patient relationship and places the patient in a tug-of-war between the insurance company and the medical provider.

Page 65 of 751

-12-

30.     The use of its computerized database computer software is an unauthorized and

illegal practice of medicine because it supplants the diagnosis and judgment of a well-trained,

skilled and licensed medical provider.  Such practice can restrict, delay or deny medical

treatment for the patient affecting his well being and even his very survival.  This conduct is

intentionally designed to deceive, defraud and deny benefits due to claimants, such as Plaintiff.

31.     In other words, Safeco's medical claims computer database is designed solely to

reduce the level of medical benefit reimbursement paid to claimants – *i.e.*, Plaintiff and the Class.

32.     The "guidelines" used by Safeco's computer software to establish a recoverable

claim have never been disclosed to Plaintiff or Class members at any time during the class

period.

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs bring these claims individually and on behalf of the following classes,

pursuant to 735 ILCS 5/2-801:

### National Plaintiff Class:

All covered persons, their third party beneficiaries and assignees
(*e.g.*, licensed medical providers), who: (a) submitted first-party
claims to Safeco pursuant to an accident, health, property or
casualty insurance policy's medical payments/expenses
("Medpay") provision; (b) had their claim submitted to computer
review, (c) received or were tendered partial payment but in an
amount less than the submitted medical expenses (based, for
example, on codes 36, 40, 43 or other similar codes), and (d)
received or were tendered an amount less than the stated policy
limits.

Page 66 of 751

-12-

**(Alternative) Illinois Plaintiff Class:**

All covered persons, their third party beneficiaries and assignees (*e.g.*, licensed medical providers), who: (a) submitted first-party claims to Safeco pursuant to an accident, health, property or casualty insurance policy's Medpay provision; (b) had their claim submitted to computer review, (c) received or were tendered partial payment but in an amount less than the submitted medical expenses (based, for example, on codes 36, 40, 43 or other similar codes), and (d) received or were tendered an amount less than the stated policy limits.

**Safeco Defendant Class:**

All Safeco entities that: (a) sell accident, health, property and casualty insurance policies with coverage for medical payments/medical expenses ("Medpay coverage"), and (b) used computer reports to adjust Medpay claims.

Excluded from the Plaintiff Class are workers compensation medical payment claims submitted in states with statutory or regulatory reimbursement fee schedules, and persona lines automobile insurance medical payment or personal injury protection claims submitted in fee schedule states (*i.e.*, New York, Utah, Hawaii, New Jersey and Pennsylvania). Also excluded from the Class are members of the Illinois state judiciary, Safeco, any entity in which it has a controlling interest, and their officers and directors and the members of their immediate families. Finally, excluded from the statutory fraud class are persons who reside in the following states (because these state statutes expressly exclude insurance transactions from statutory coverage): Alabama, Alaska, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Missouri, New Hampshire, Rhode Island, South Carolina, Utah, Vermont, Virginia and Wisconsin.

34.    The proposed nationwide and/or statewide Class satisfies all of the statutory prerequisites for class certification, as set forth seriatim infra.

Page 67 of 751

-14-

35. **Numerosity.** Joinder of all members of either proposed Class is impracticable, as it consists of thousands of persons who reside throughout Illinois and the United States. The defendant Safeco class consists of more than 10 Safeco entities (*e.g.,* American Economy Insurance, American States Preferred, First National Insurance Company of America and General Insurance Company of America) that sell Medpay coverage and use third party reports to adjust first-party Medpay claims. 735 ILCS 5/2-801(1).

36. Although the precise number of Class members is unknown to Plaintiff, given the number of Safeco Medpay claimants, this action amply satisfies the numerosity requirement. The Class includes thousands of covered claimants, such as injured persons and licensed medical providers by assignment or as third party beneficiary, all of whom submitted claims for reasonable expenses for necessary medical treatment, but which were reduced in part because they exceeded the amounts and/or types of treatment dictated by automated claims evaluation software based on codes 12, 40 and 43 and other similar codes (such as code "UCR 65" and/or "UCR 85").

37. Joinder of this many persons would be impracticable, if not impossible. Additionally, because Safeco issues policies throughout the United States, Class members are geographically dispersed thereby making joinder even more problematic than it already is because of their sheer numbers. Attempting to coordinate litigation amongst thousands of persons who reside in states across the country would be extremely difficult and costly for all parties and an unnecessary waste of already limited judicial resources.

38. **Commonality.** This case presents multiple questions of fact or law common to the class, which predominate over any questions affecting only individual members of the Class. 735 ILCS 5/2-801(2). As set forth herein, Safeco has acted wrongfully in the same basic manner

as to the entire Class.  The claims of Plaintiff and other members of the Class are based upon the same standard form insurance policies, the same material non-disclosures, the same use of computerized databases to adjust claims and the same scheme to improperly reduce Medpay claims paid.

39.     The common questions of law or fact that predominate over issues affecting only individual members of the Class, include, inter alia:

(a)     Whether Safeco unilaterally re-priced, or re-valued, Medpay claims (using, for example, codes 40 or UCR 85) to a set percentile, and denying as "unreasonable" claims that exceed this percentile, without disclosing this practice in its insurance policies;

(b)     Whether Safeco makes assessments of what constitutes "necessary" treatment of particular claimants, not on the basis of a medical provider's analysis of that patient's injury, but instead on the basis of a computer database;

(c)     Whether Safeco's insurance policy provisions regarding medical payments coverage are ambiguous and should be interpreted in favor of coverage;

(d)     Whether the Class is entitled to a presumption of insurance coverage for medical professional-approved treatment and expense from licensed medical providers that is related to the covered occurrence;

(e)     Whether computer reports employ a legitimate means of evaluating Medpay claims, or whether they are inherently biased because they are predisposed (and programmed) to reduce paid claims;

(f)     Whether Safeco's conduct in the processing and adjusting of Medpay claims, as alleged, constitutes a breach of the insurance contract;

(g)     Whether Safeco's practice of retroactively reducing already incurred, related medical treatment and expense (using, for example, code 43 and similar codes) constitutes a breach of contract;

(h)   Whether the use of computer reports constitutes breach of contract;

(i)   Whether Safeco "bundles" and/or "downcodes";

(j)   Whether "bundling" and/or "downcoding" constitute breach of contract;

(k)   Whether Safeco's conduct constitutes statutory fraud;

(l)   Whether a declaratory judgment regarding the challenged conduct is appropriate; and

(m)   Whether Plaintiff and the Class have been damaged, and if so, in what amount.

40.   Moreover, the claims of Plaintiff and other members of the Class arise from the same practices and are all based upon the same legal theories.

41.   **Adequacy.**  Plaintiff, as representatives, will fairly and adequately protect the interests of the Class.  735 ILCS 5/2-801(3).  Plaintiff has no interests antagonistic to those of other Class members.  The claims of Plaintiff and other members of the Class are premised upon the same underlying facts; thus, by proving his own claims, Plaintiff will prove the claims of the Class.

42.   Plaintiff has retained competent counsel experienced in class action litigation, and has and will continue to prosecute this action vigorously.  Safeco will fairy and adequately protect and represent the interests of the defendant Safeco class, and has no interests antagonistic to the defendant class members.  Safeco has retained competent counsel.

43.   **Appropriateness.**  A class action is an appropriate method for the fair and efficient adjudication of this controversy.  In addition to the problems inherent in joinder of all members of the Class, the economic damages suffered by each individual member of the class is

17

relatively small, so that the expense and burden of individual litigation would make it unlikely that individual members of the Class would be able to take on a large corporate defendant like Safeco in a complex matter such as this.  Absent a class action, Safeco will likely continue in its scheme to deprive claimants of their Medpay benefits and will be enabled to continue to profit at the expense of Plaintiff and other members of the Class.

44.     Furthermore, the cost to the court system of individualized litigation would be substantial.  Individualized litigation would also present the potential for inconsistent or contradictory judgments and would magnify the delay and expense to all parties and the court system in multiple trials of identical or similar factual issues.  Without this class action, Plaintiff and Class members will effectively be left without redress or a remedy.

### FRAUDULENT CONCEALMENT

45.     Throughout the Class period, Safeco affirmatively concealed from Plaintiff and other members of the Class the foregoing wrongful scheme to reduce the amounts Safeco would pay on Medpay claims as provided in the policies it issued.

46.     Safeco had a duty to inform claimants that their Medpay claims would be subject to the determination of claims evaluation software, that undisclosed ceilings in benefits were being imposed, and that payments would be automatically capped and limited thereby.  Notwithstanding its duty to Plaintiff and other members of the Class, Safeco never disclosed its Medpay claims reduction scheme.

47.     Despite exercising reasonable diligence, Plaintiff and the other members of the Class could not have earlier discovered Safeco's wrongful scheme to reduce Medpay claims, as described herein.

Page 71 of 751

48.     The running of the statute of limitations has been suspended with respect to any claims that Plaintiff or other members of the Class have brought or could have brought as a result of the unlawful and fraudulent course of conduct described herein.  Safeco, through various devices of secrecy, affirmatively and fraudulently concealed its unlawful scheme and course of conduct from Plaintiff and the other members of the Class.  Plaintiff and other members of the Class were unable to earlier discover Safeco's scheme and unlawful conduct, or any of the facts which might have led to the discovery of its wrongdoing, with the exercise of due diligence.

49.     Safeco is estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its acts of fraudulent concealment and by selling insurance policies under which it did not intend to perform.  Safeco has actively concealed the conduct alleged herein by, inter alia, suppressing disclosure of this information through confidentiality agreements negotiated with third party vendors, and by not disclosing in its insurance policies any of the conduct alleged herein.

### CAUSES OF ACTION

### COUNT I
### (Breach of Contract)

50.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

51.     This count is brought by the Class Representative Plaintiff individually, and on behalf of the proposed Plaintiff Class.  (A copy of the insurance policy contract under which Plaintiff claims is attached hereto as Exhibit B.)

52.     Under and by virtue of the insuring agreements of Safeco's policies of insurance is language to the effect that Safeco shall pay to or on behalf of a covered person the costs of the hospital, medical and ancillary services, to the extent of the policy limits, for injuries incurred by

Page 72 of 751

persons covered under those policies.  The insurance policies under which Plaintiff and other members of the Class are valid and enforceable contracts.

53.     Plaintiff and other members of the Class fulfilled their obligations under the above-described insurance policies, including, inter alia, submitting proof of loss in the form of medical bills, paying premiums (if applicable) and providing any other information required of them.

54.     Plaintiff and other members of the Class provided and/or incurred covered medical expenses and submitted to Safeco properly authenticated medical bills resulting from licensed medical treatment.

55.     Under the above-described insurance policies, Safeco promised to pay to or on behalf of Plaintiff and the Class all reasonable medical expenses incurred for necessary medical treatment as a result of injury caused by a covered incident, within policy limits.

56.     Notwithstanding the foregoing contractual duties, Safeco failed to pay to claimants all reasonable medical expenses incurred for necessary medical treatment, as provided in the insurance policies it issued.  In breach of its contractual duties to Plaintiff and other members of the Class, Safeco systematically reduced and/or partially denied their claims for reasonable expenses for necessary medical treatment that exceeded mathematical and other limitations dictated by claims evaluation software, as described herein.

57.     Notwithstanding its contractual duties described herein, Safeco "re-priced" and capped Medpay expenses of claimants to undisclosed, pre-determined percentiles, and, within policy limits, partially denied medical bills as "unreasonable" that exceeded these pre-determined percentiles (e.g., using codes "40," "UCR 85" and similar codes).

Page 73 of 751

58.     Notwithstanding its contractual duties described herein, Safeco unilaterally denied

in part claims for treatment as "unnecessary" (*e.g.*, using codes 12, 43 and similar codes) where

the treatment was related to a covered incident, the treatment was provided in good faith by

licensed medical providers, and each provider personally and physically examined the patient,

which neither Safeco nor its computer program did prior to rendering the decision to partially

deny the claim.

59.     Alternatively, the Medpay policy language should be construed in favor of

coverage, because it is ambiguous in the following respects:

> (a)  How "reasonable" medical expense is determined;
>
> (b)  How "necessary" medical treatment is determined;
>
> (c)  What type of proof is required to establish (a) and (b);
>
> (d)  How "usual, customary and reasonable" medical expense is determined;
>
> (e)  How "usual, customary and reasonable" medical treatment is determined;
>
> (f)  The policy's "exclusions" do not exclude "unreasonable" expense or "unnecessary" treatment;
>
> (g)  How coding guidelines are used to determine a covered claim;
>
> (h)  Safeco may not "bundle" and/or "downcode" CPT codes for medical treatment from licensed medical providers;
>
> (i)  Safeco may not retrospectively deny in part medical treatment from licensed medical providers that is related to the covered occurrence, in the absence of fraud, bad faith or mistake;
>
> (j)  Usual and customary medical treatment and expense from licensed medical providers, which is related to the covered occurrence, may not be excluded under the policy in the absence of fraud, bad faith or mistake;

(k) Medical treatment and expense from licensed medical providers is presumptively reasonable and necessary;

(l) Medpay claims are not cut-off at a pre-set percentile (*e.g.*, the 85th percentile);

(m) Medpay claims are not cut-off at a pre-set percentile without taking into account the particular medical provider's usual and customary fee; and/or

(n) Safeco did not reserve itself the unilateral right to make decisions, after-the-fact, of whether already-incurred medical expenses were reasonable and necessary, when such medical treatment/expense was prescribed, called for and submitted in good faith by licensed medical professionals and related to the covered occurrence.

60.     As a direct and proximate result of the foregoing acts and/or omissions of Safeco, Plaintiff and other members of the Class were damaged in an amount to be determined at trial.

## COUNT II
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, et seq.) and the Substantially Similar Laws of Other States)

61.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

62.     This count is brought by the Class Representative Plaintiff individually, and on behalf of a class of those similarly situated, pursuant to 815 ILCS 505/1, et seq., and the substantially similar laws of other states, excluding those states identified in paragraph 33 (collectively, the "Consumer Fraud Acts").

63.     At all times relevant hereto, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. and the substantially similar laws in other states (*i.e.*, the "Consumer Fraud Acts"), which prohibit any concealment, suppression or omission of any material fact, with the intent that others rely thereupon, in the conduct of any trade or commerce.

Page 75 of 751

64.     At all times relevant hereto, Plaintiff and other members of the Class, and Safeco, were "persons" within the meaning of the Consumer Fraud Acts, such as 815 ILCS 505/1(c).

65.     At all times relevant hereto, Safeco conducted "trade" and "commerce" within the meaning of the Consumer Fraud Acts, such as 815 ILCS 505/1(f).

66.     Plaintiff and other members of the Class members are "consumers" within the meaning of the Consumer Fraud Acts, such as 815 ILCS 505/1(e).

67.     Under the Consumer Fraud Acts, the use or employment of any practice described in, for example, section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2) in the conduct of any trade or commerce is unlawful whether any person has in fact been misled, deceived or damaged thereby.

68.     Safeco engaged in a deceptive, unfair and immoral practice by using biased claims adjusting software that systematically reduced claims for, among other things, reasonable expenses for necessary medical treatment by denying that part of the bill that exceeded a secret mathematical percentile, as described herein.

69.     As a direct and proximate result of the foregoing acts and/or omissions of Safeco, Plaintiff and other members of the Class were damaged in an amount to be determined at trial.

## COUNT III
### (Declaratory Judgment)

70.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

71.     This count is brought by the Class Representative Plaintiff individually, and on behalf of a class of those similarly situated, pursuant to 735 ILCS 5/2-701, for declaratory judgment.

72.     There is an actual controversy between the parties concerning the construction of coverage for medical bills incurred by Medpay claimants (*i.e.*, Plaintiff and the Class) under Safeco insurance policies described herein, under which Plaintiff and other members of the Class are covered. Specifically, there is legitimate dispute over, inter alia: (a) the meaning of what constitutes "reasonable expense for necessary medical services," (b) the meaning of what constitutes "usual, customary and reasonable" medical expense and treatment, (c) what "coding guidelines" are used to determine a covered claim; and (d) the propriety of particular computer generated "codes" – such as codes 36, 40 and 43 – to adjust claims, and whether the computer reports are inherently biased in favor of Safeco because they are intended to systematically reduce claims payouts. All of this compels for an immediate and definite determination of the parties' rights, the resolution of which would help terminate all or part of the dispute.

73.     Plaintiff has a tangible legal interest in resolving the above-described dispute, as he is a covered claimant under the Safeco insurance policy from which the dispute arises.

74.     Safeco's conduct is opposed to the above-described interest of Plaintiff and the Classes in resolving this dispute, as Safeco has treated first-party medical claims as adverse, third-party claims.

75.     There is an ongoing controversy between Plaintiff and members of the Class and Safeco, which is likely to be prevented or resolved if the Court decides the case.

WHEREFORE, plaintiff Lawrence Shipley, D.C., individually and on behalf of the Class described herein, prays for an Order of this Honorable Court as follows:

A.     Certifying the Breach of Contract, Statutory Fraud and Declaratory Judgment claims as a class action of persons described herein;

B.      Designating Plaintiff as representative of the Class and his counsel as Class

counsel;

C.      Entering final judgment in favor of Plaintiff and the Class and against Safeco for

their damages (but in no event shall the recovery to Plaintiff or any individual Class member

exceed $75,000), and for such other relief available by law, in an amount to be proven at trial;

D.      Entering final judgment in favor of Plaintiff and the Class, and against Safeco,

reimbursing all allowable costs, including the reasonable fees and expenses of any necessary

expert witnesses;

F.      Entering final judgment in favor of Plaintiffs and the Class and against Safeco for

their reasonable attorneys' fees, or in the alternative, allowing Class counsel's fees to be paid

from any common fund created as a result of this action;

G.      Entering declaratory judgment as follows:

(1) Declaring Safeco's medical payments coverage ambiguous, which should
therefore be construed in favor of coverage;

(2) Declaring that Safeco's policies did not reserve to Safeco the unilateral right
to retrospectively deny payment of reasonable medical expenses for necessary
treatment where: (a) the claim was related to a covered incident, and (b) the
treatment and expense was provided in good faith by licensed healthcare
professionals who personally and physically examined the patient, and there is
no allegation of fraud, bad faith or mistake;

(3) Declaring that Safeco's insurance policies, described herein, do not reserve to
Safeco the unilateral right to "re-price" Medpay expenses to undisclosed, pre-
determined percentiles and deny as 'not reasonable' medical bills that exceed
these pre-determined percentiles based on code 40, UCR 85 and similar codes
that purport to re-price claims;

(4) Declaring that Safeco's insurance policies, described herein, do not reserve to
Safeco the unilateral right to deny Medpay treatment as 'not necessary,' based
on codes 43 and similar codes, where the treatment was incurred from and
provided in good faith by licensed medical providers, was related to the

Page 78 of 751

25

accident, and there was no personal or physical examination of the patient by Safeco;

(5) Declaring that the claims evaluation software, described herein, is not a legitimate means of evaluating first-party Medpay claims without proper and adequate policy disclosure;

(6) Declaring that Safeco's insurance policies, described herein, do not give Safeco the right to use claims auditing software to, based on codes 36, 40 and 43 (among others), retrospectively deny payment of reasonable medical treatment for necessary treatment where the treatment was already incurred, related to the accident, and there was no personal or physical examination of the patient by Safeco;

(7) Declaring that Safeco's insurance policies, described herein, do not give Safeco the right to impose 'HMO' or 'managed-care' type health cost controls on Plaintiff and the Class, as described herein, without full disclosure; and

(8) Declaring, in the alternative, that Safeco's insurance policies, described herein, are ambiguous on whether Safeco has reserved to itself the unilateral right to make such after-the-fact challenges, and thus, the policies' ambiguities must be construed in favor of claimants and in favor of coverage; and

H.     Granting such further relief as the Court deems just and equitable.

DATED: May 22, 2003.

Respectfully submitted,

**LAWRENCE SHIPLEY, D.C,
Class Plaintiff,**

By: _____
       One of His Attorneys

Paul M. Weiss
Tod A. Lewis
William M. Sweetnam
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
Ph. 312.220.0000

L. Thomas Lakin
Bradley M. Lakin
Richard J. Burke
Jeffrey A. J. Millar
**THE LAKIN LAW FIRM, P.C.**
301 Evans Avenue, P.O. Box 27
Wood River, IL 62095-1127
Ph. 618.254.1127

Patrick Johnston
**GIACOLETTO & JOHNSTON, P.C.**
1601 Vandalia Street
Collinsville, IL 62234

Charles W. Chapman
**CHARLES W. CHAPMAN CHARTERED**
301 Evans Avenue, Suite 300
P.O. Box 559
Wood River, IL 62095

**Attorneys for Plaintiff
and Proposed Plaintiff Class**